## HICKS v. SUMTER COTTON MILLS.

1. LAW CASE—FACTS—APPEAL.—This court cannot review questions of fact on an appeal in a law case.

2. MASTER AND SERVANT—NEGLIGENCE—NON-SUIT.—Where an employee of a cotton mill was injured by the slipping of a band from its pulley, but there was no evidence tending to show that this accident was caused by any negligence on the part of the mill proprietors, the employee, in his action against the mill company to recover damages, was properly non-suited.

Before WALLACE, J., Sumter, March, 1892.

This was an action by Reuben N. Hicks against the Sumter Cotton Mills, commenced in May, 1890.

*Messrs. Stuckey & Green,* for appellant.

*Messrs. Lee & Moise,* contra.

April 3, 1893.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This action was brought by the plaintiff for damages against the defendant corporation, for personal injuries received while in the discharge of his duties as an employee in the said mills.   The complaint states that on or about May 26, 1888, the plaintiff was engaged in the service of said defendant corporation, and required to do service as an employee, whenever and wherever thereto directed by the manager, D. James Winn; that while engaged in such employment, the plaintiff was directed by the said manager to go upon a high platform erected within the building occupied by the said mills, for the purpose of adjusting the belt of the machinery, and while in the performance of his duty, the said platform was torn down by the power of the said machinery, and the plaintiff was, with great violence, thrown upon the floor, and thereby wrongfully and grievously injured and wounded in his person; that the injury aforesaid was caused by the negligence of the defendant, in that the said defendant wrongfully failed to exercise due care in furnishing, erecting, adjusting and operating the machinery and appliances appertaining thereto in the said mills, and that by reason of such defective machinery and the negligent adjustment and operation thereof, the said platform was torn down and the plaintiff thrown upon the floor and injured as aforesaid, and to his damage ten thousand dollars.

The defendant corporation answered, admitting that the company was incorporated, and D. James Winn was its president, and that the plaintiff was in its employment at or about the time therein mentioned.   For a second defence, the defendant denies each and every other allegation of the complaint.   For a third defence, that if the plaintiff received the injuries

complained of, the same was not caused by any negligence on the part of the defendant, but was owing to the fault of the plaintiff himself. And for a fourth defence, that the injuries were not caused by the defendant, but was owing to the fault of the coemployees of the plaintiff, &c.

The cause came on for trial before Judge Wallace and a jury. The plaintiff testified, and he examined Blanding Jones, the engineer and mechanic of the mill (who put up the small belt shafting and pulleys, which caused the injury). The testimony is all in the record, but is voluminous; and for convenience of reference, we have made extracts of all that relates to the alleged cause of the accident, as follows:

*Witness R. N. Hicks.*—Q. Are you a mechanic? A. No, sir. * * * Q. What made that? A. The distance wass too close between the pulleys for the belt. (A mere opinion of this witness, shown to be untrue by testimony.) * * * Q. Do you know anything about machinery—do you know the proper size for pulleys, what size shafting, etc.? A. No, sir. * * * Q. The engine was not shut off until after the belt slipped off, etc.? A. No, sir. * * * I don't know what the distance is. Q. What was the size of the belt? A. Two and a half inches, as well as I can judge.

*J. Blanding Jones.*—Q. Who put up that belt and shafting? A. Hicks and myself. Q. Did you put it up according to Mr. Winn's instructions? A. According to my judgment and according to Mr. Winn's instructions. * * * Q. Do you profess to be a mechanic? A. I do. Q. Do you say that the pulley was put on the safest place on the shaft? A. Yes, sir, because there was no room to put it any other way to make it opposite the fan. Q. Could not the pulley be put in a different place? A. No, sir, not to go on the fan. * * * Q. Do you mean to say that pulley had to be put where it was? A. I do. Q. Could not this be changed? No, sir. * * * Q. Belts sometimes run off the pulleys? A. Yes, sir. Q. When they run off on a smooth shaft, they will not lap? A. I have seen them do it. Q. Do you know where this pulley ran off on this particular occasion? A. Yes, sir. Q. Do you know how much room there is in there? A. I measured it once; there is plenty of

room there for the belt to run. Q. Pulleys are in the same place now that they were then? * * * How close are the pulleys? A. Eleven inches from pulley to pulley. The pulleys are the same distance apart now that they were at time of accident. Served my time in the Mobile and Ohio shops. Worked at the business eighteen to twenty years. Am a native of Sumter. This shaft put up by myself and Hicks. According to my judgment, they were perfectly safe. There were eleven inches play on one side of the wheel and eight inches on the other. (Two and a half inch belt.) * * * I mean to say, the pulleys were far enough to be safe.

*W. H. Epperson.*—Put pulleys right together, then they can't run off. If they can't be put together, it is better to put them far apart; if you don't, there is danger of the band catching on the set screws; but the safest way is to put them right together.

*Jas. Mixon.*—Q. What was the cause of the accident? A. The pulleys were too close together. (Mr. Moise objects.) Q. What did you say? A. The pulleys were too close together. * * * Q. Do you know the distance between here and there? A. About twelve or fourteen feet; between small and large pulleys; I don't think it is more than four inches. Q. What is your idea about the distance being safe? A. I think it is too close. (Mr. Moise objects.) Pulleys are about three or four inches apart. * * * While the belt is actually on the pulley, it don't hurt anybody.

The accident occurred by reason of the band leaving the pulley. Why did it leave? When the plaintiff rested his case, the attorney of the defendant moved for a non-suit, which, after argument, was granted, the judge saying: "Now, I suppose it is conceded on all sides, that the cause of the accident was the leaving of the pulley by the band. Why did it leave? Did it leave on account of the negligent construction of the band or of the pulley? If so, where is the evidence? Is it proved in this case that there was a defect in the band, a defect in the pulley, or a defect in the shaft, and the result of such defect, the band went off? Was it a matter of omission on the part of the company? Is there any such testimony? The evidence of the plaintiff is, that the pulleys were too close together. If

they were too close together, is that evidence going to show the cause of the accident? That may or not be the cause of the band leaving the pulley. Is there any such evidence? You cannot hold that the defendant must be mulcted for negligence until he is proved to be negligent. So I do not think that the evidence of negligence in this case is sufficient to justify a ground of recovery; not enough to show why the band left the pulley. The band left the pulley, and why did it do it? Was it due to the negligent construction of the pulley, or the belt or the shaft? There is not a tittle of evidence on that subject, so I am obliged to grant the motion."

From this order the plaintiff appeals to this court upon the following grounds, viz: (1) Because his honor, the presiding judge, erred in deciding that the evidence adduced on behalf of the plaintiff was insufficient to sustain his action; and (2) Because his honor erred in deciding that there was no evidence to support plaintiff's case to be submitted to the jury; and in granting defendant's motion for a non-suit.

It will be observed that both these grounds of appeal complain of error as to a pure question of fact. It is well known that the province of this court is expressly limited to the correction of errors of law. But in appeal from an order of non-suit for the lack of proof, it becomes necessary for this court to consider, in a certain sense, the testimony, with a view to discover whether there was error of law in granting it. As we think, the true rule upon the subject is stated in the case of *Hooper* v. *Railroad Company,* 21 S. C., 549, as follows: "It is true, as this court has often ruled, that a non-suit for want of evidence should not be granted where there is any evidence to go to the jury, whose exclusive province it is to decide upon the weight of conflicting testimony. But we do not understand that the meaning of this rule is, that every question involving a fact must go to the jury, whether there is or is not proof to support it. If there is no conflicting evidence, and all is on one side, it may be the duty of a judge to direct a non-suit, as it would be a nugatory thing to send such an unsupported case to the jury. *Brown* v. *Frost,* 2 Bay, 126; *Hopkins* v. *DeGraffenreid, Ibid.,* 441; *McCall* v. *Cohen,* 16 S. C.,

448. A high authority expresses the principle in this form: The judge has to say whether any facts have been established by evidence, from which negligence may be reasonably inferred. The jurors have to say whether, from the facts when submitted to them, negligence *ought* to be inferred. The relevancy of evidence, and whether any exists which tends to prove, or is capable of proving, negligence, is for the court. Pierce Rail., 312."

The injury inflicted on the plaintiff in this case was serious, and we have considered the evidence carefully. There were no facts in the case, except that the band went off the pulley, and "lapped up" on the shaft, tearing down the platform on which the plaintiff stood, and precipitating him to the floor. We agree with the Circuit Judge, that no negligence was shown on the part of the defendant corporation. The unfortunate occurrence seems to have been a pure accident, without fault on the part of any one, so far as imperfect human knowledge can discover; one of those unfortunate casualties incident to the business in which the plaintiff was engaged.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.