WILLIAM L. NELSON *vs.* SANFORD MILLS.

York.    Opinion May 14, 1896.

*Contributory Negligence.    Elevator.*

</div>

| 89 | 219 |
|-----|-----|
| 101 | 409 |

An employee is debarred from recovering damages for an injury when he has contributed in causing the injury by his own unjustifiable and foolhardy conduct, although the employer may also have been guilty in some degree of a prior act of negligence that co-operated in producing the result.

The plaintiff was engaged in the management of a freight elevator in the defendant's mill, where he had been in the same employment for some time, and had gained a familiarity with the general working and business of the mill. His duties were, with the assistance of an associate employee, to load in the upper stories of the building the products of the mill upon a truck, wheeling them to the elevator and taking them down to a story below, and thence wheeling them to other places in the mill. Having placed the truck heavily loaded upon the elevator, he undertook to lower it, but found after repeated attempts that it would not move. The floor or platform of the carriage thus loaded was, on one side, four to five inches higher from the floor of the room than on the other side. He perceived, as he thought, that the chain which runs over the drum in the elevator-pit was loosened from its place and supposed that the carriage was suspended by the dogs,—an arrangement attached to all elevators by which they may be caught up in case of the ordinary attachment giving away. It turned out, however, that the

carriage was held by a bolt or nut projecting through the floor of the carriage and impinging against the wall of the elevator where it was held fast. He then went down into the pit, taking his associate employee with him,—the latter, however, being too wary to expose himself to danger,—and finding the chain off the drum he inconsiderately jerked it several times to throw it back in place. In doing so, his hand, with which he was holding onto the frame work of the elevator was exposed to the heavily-loaded descending carriage, as it suddenly fell; and while so placed, was thus caught by it and injured.

*Held;* that the plaintiff must have known that there was some serious trouble with the elevator somewhere; and that he should have given notice to some of the machinists or carpenters about the mill, who were there as emergency men for the purpose of making any repairs that might be needed, and of which he was aware and knew that he could and should have called upon them to aid him in the dilemma.

It further appears that all the parts of the.elevator were so open and exposed to view as to be readily seen by any one having knowledge of such structures, while the plaintiff had not knowledge enough to see what the trouble was, or competency to apply any remedy. While he might voluntarily take such hazardous risks for himself, but not for the defendant company, he could have avoided the responsibility by giving notice of the defect complained of to his superiors. This he failed to do.

*Wormell* v. *Maine Central R. R.*, 79 Maine, 397, affirmed.

ON EXCEPTIONS BY PLAINTIFF.

This was an action on the case for personal injuries caused, as the plaintiff alleged, by a defective elevator. At the close of the plaintiff's testimony the presiding justice ordered a nonsuit, and the plaintiff took exceptions to this ruling.

The facts are stated in the opinion.

(Declaration) " . . . for that said defendants, at said Sanford on the twenty-fifth day of June, 1891, were the owner of certain mills and buildings in said Sanford with the machinery therein used by said Sanford Mills in the manufacture of carriage robes, horse clothing and mohair plushes; that an elevator ran from the ground floor of one of said mills or buildings, called old number two up through the building to the floor above and was used by said defendants to get their stock and goods from the floor above down to the ground floor; that said elevator and the machinery running the same were by the negligence and default of the defendants, constructed unsafely, and with defective and improper

materials, and were defective, out of repair and in unsafe condition and thereby dangerous and unfit for the purposes for which they were used as aforesaid, which the defendants well knew, but of which the plaintiff was ignorant; that the plaintiff on the twenty-fifth day of June, A. D. 1891, was employed by defendants as a laborer, that it was a part of the work and labor for which said plaintiff was employed by said defendants as aforesaid to use and operate said elevator in carrying and getting goods and stock from the upper floors of said building to the ground floor, and by reason of said defective and dangerous condition and want of repair of said machinery and elevator as aforesaid, on the twenty-fifth day of June, 1891, and while the plaintiff was employed by said defendants as aforesaid, and while acting in the line of his duty under said employment, using due care, the elevator fell, striking upon the left hand of the plaintiff, breaking, crushing and mangling his said hand in such manner that it was necessary for said hand to be amputated, thereby rendering him unfit and unable to do any manual labor, whereby he suffered great pain and was put to a large expense for surgical and medical attendance and medicines."

*Edgerly and Mathews*, of the N. H. bar, for plaintiff.

The facts upon which court ordered nonsuit were not so clear that, as matter of law, plaintiff could not recover. Court was not to pass upon weight of evidence, but only to determine whether there was evidence which should be submitted to the jury. *Lawless* v. *Conn. River R. R.*, 136 Mass. 5; *Polley* v. *Lenox Iron Works*, 4 Allen, 333; *Forsyth* v. *Hooper*, 11 Allen, 419; *Hough* v. *Railroad Co.*, 100 U. S. 223; *Gaynor* v. *Old Colony R. R. Co.*, 100 Mass. 208; Wood, Master and Servant, pp. 771 and 777.

There is no controversy about the facts, but only a question whether from certain facts proved, the plaintiff can be charged with competent means of knowledge of the danger, sufficient to charge him with having assumed the risk. Whether the plaintiff had competent means of knowledge of the danger, and knew and appreciated the risk, should have been left to the jury. *Railroad Company* v. *Stout*, 17 Wall. U. S. 657; *Packet Company* v. *McCue*,

17 Wall. U. S. 508; *Scanlon* v. *B. & A. R. R. Co.*, 147 Mass. 487; *Patnode* v. *Warren Cotton Mill*, 157 Mass. 283.

Servant is under no obligation to make close inspection to discover defects. Wood, Master and Servant, pp. 773–4.

Court cannot hold that plaintiff was in fault for not assuming that the defendants had neglected their duty to him when it was more reasonable and likely that the cause of elevator not moving, when shipped, was not through the negligence of any person, but that the speed or power had been shut off for good reasons.

When the plaintiff reached the bottom floor and saw the chain hanging loose, he had a right to assume that the dogs were in repair and had caught and was holding the elevator, and that there was no danger in working under and around the elevator. *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. p. 655; Wood, Master and Servant, p. 763, § 375.

It must appear that plaintiff understood and appreciated the risk and danger of injury before he can be said to have assumed the risk. *Prendible* v. *Conn. River Manuf. Co.* 160 Mass. 131–139; *Fitzgerald* v. *Conn. River Paper Co.* 155 Mass. 155; *Mahoney* v. *Dore*, 155 Mass. 513.

It is only when the servant, with full notice of risk he assumes, chooses to enter the employment, that the master is relieved from liability. No assent can be implied when there is no knowledge of hazard; there must be an intelligent choice to assume the danger. Wood, Master and Servant, pp. 729, 741.

One does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger, without appreciating the danger. *Mundle* v. *Hill Mfg. Co.* 86 Maine, p. 405.

Allowing machinery to remain out of repair, when its condition is brought to the master's notice, and not known by the servants operating it, is culpable negligence.

It is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of this service, and another thing to know or appreciate the risk resulting, or which may follow, from such defects. The mere fact that servant

knows the defect may not charge him with contributory negligence or the assumption of the risk growing out of it: the question is did he know, or ought he to have known, in the exercise of ordinary common sense and prudence that the risk, and not merely the defect, existed.

When a servant enters upon service with dangerous machinery, he has a right to rely upon it that the master will discharge his duty fully, both as to the selection of the appliances and his watchfulness in keeping them in repair; and while he is bound to see defects which are obvious, yet he is under no obligations to make a close inspection of the appliances to discover whether it is defective. As he has a right to presume that his employer had done his duty in that respect, therefore, in all cases, the risk assumed by the servant is to be measured by this duty on the master's part. 14 Am. & Eng. Ency. pp. 841, note, 896; Wood, Master and Servant, page 773-4.

The more rude and cheap the machinery, and the more liable on that account to cause injury to servant, the greater the obligation of the master to make up for its defects, by attention necessary to prevent such injury. *Dixon* v. *Rankin,* 14 Court of Sess. 420, cited from *Buzzell* v. *Laconia Manuf. Co.,* 48 Maine, p. 119.

*Frank Wilson and Frank M. Higgins,* for defendant.

Plaintiff had notice that the elevator was out of repair. Counsel cited: *Walker* v. *Redington Lumber Co.,* 86 Maine, 191; *Connors* v. *Morton,* 160 Mass., 333; *Scanlon* v. *B. & A. R. R.,* 147 Mass. 484, 487; *Myers* v. *Hudson Iron Co.,* 150 Mass. 125. 134; *Lothrop* v. *Fitch. R. R.,* Id. 423; *Anderson* v. *Clark,* 155 Mass. 368; *Coombs* v. *Fitch. R. R.,* 156 Mass. 200; *Ferren* v. *O. C. R. R.,* 155 Mass. 513, 519; *Goldthwait* v. *Haverhill &c., Ry.,* 160 Mass. 556-7; *Wormell* v. *Me. Cent. R. R.,* 79 Maine, 405-6; Wood, Master and Servant, p. 638; 14 Am. & Eng. Ency. p. 859; Buswell, Personal Injuries, 215; *Mellor* v. *Merch'ts Mfg. Co.,* 150 Mass. 362; *Conley* v. *Am. Exp. Co.,* 87 Maine, 352; *Shanny* v. *Andro. Mills,* 66 Maine, 420; *Mundle* v. *Hill Mf'g. Co.,* 86 Maine, 400.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WIS-
WELL, JJ.

PETERS, C. J.   This claim surely falls within the class of cases
where a plaintiff is debarred from recovering for an injury because
he has contributed in causing the injury by his own unjustifiable
and foolhardy conduct, although the defendant may also have been
guilty in some degree of a prior act of negligence co-operating with
his in producing the result.   And it is not so clear that defendants
were themselves guilty of any negligence which assisted in causing
the injury in the present case.   The plaintiff's own narrative
explains unfavorably to himself the cause of his accident and
injury.

He was at work in a manufacturing establishment as an attic
boy, so-called, although thirty years old, and a man apparently of
a fair intelligence for one in his situation in life, who had had
several years of experience in and about the defendant's mills,
He was engaged in the management of a freight elevator, and had
been in the same employment for some time before, and had gained
a familiarity with the general working and business of the mill.
His duties were, with the assistance of an associate employee, to
load in the upper stories of the building the products of the mill
upon a truck, wheeling them to the elevator and taking them down
to a story below and thence wheeling them to other sections of the
mill to be left in other hands.

. On the day he got hurt, after the truck, heavily loaded with
freight, was got upon the floor of the elevator-carriage, he under-
took by shipping the elevator, that is by putting the machinery in
gear which controlled its movement, to start the carriage with the
load downwards when after repeated attempts he found that the
elevator, or more strictly the carriage of the elevator, would not
move.   He perceived, he thought, that the chain which runs over
the drum in the pit of the elevator was loosened from its place, and
supposed that the carriage had dropped from its ordinary holdings
and had become suspended by the dogs dropping into the clevis or
rack, an arrangement attached to all elevators by which they may

be caught up in case of the ordinary attachments giving away. It turned out, however, that the carriage was held by a bolt or nut projecting through the floor of the carriage and impinging against the wall of the elevator where it was held fast in close quarters.

At this point was the mistake of the plaintiff committed. He must have known that there was some serious trouble with the elevator somewhere. The fact that the floor or platform of the carriage was on one side four or five inches higher from the floor of the room than on the other side should have been evidence to him that he did not know what the trouble was. In any view of the situation he should have given notice to some of the machinists or carpenters about the mills who were there as emergency men for the purpose of making any repairs that might be needed in any of the departments of the mill. And the plaintiff was aware of the fact and knew that he could and should call upon them to help him out of the dilemma. They were skilled persons who would almost at a glance have ascertained the real trouble, for it is testified that all the parts of the elevator were so open and exposed to view as to be readily seen by any one having any knowledge of such structures, while the plaintiff had not knowledge enough to see what the trouble was or competency to apply any remedy. He had never been called upon for any such services as he undertook to perform in this instance, and he should have known that he was violating the unwritten law of the mill in making the attempt which resulted so injuriously to him. He most inconsiderately proceeded to the pit of the elevator, taking his associate employee with him, the latter being too wary however to expose himself to danger, and, finding the chain off the drum, he jerked it several times to throw it back in place, when down came the heavily loaded carriage striking and badly mutilating his hand with which he was holding onto the frame work of the elevator below, the hand being so exposed as to be sure to be caught by the descending carriage if it came down. There was not a prudent step in his conduct from beginning to end. He could voluntarily take such hazardous risks for himself, but not for the defendant company. There are quite a number of cases in this state directly or indirectly supporting our

decision in the present case, one or two of which only need be cited. *Conley* v. *Am. Ex. Co.*, 87 Maine, 352. Very like the case cited is that of *Cunningham* v. *Merrimac Paper Co.*, 163 Mass. 89, where the court lays great stress on the fact that the plaintiff failed to give his superiors notice of the defect complained of when he might have done so, thereby casting all the responsibility on them and avoiding it himself. *Wormell* v. *Maine Central R. R.*, 79 Maine, 397, has become a standard authority in this class of cases. *Walker* v. *Redington Lumb. Co.*, 86 Maine, 191. See, also, *Degnan* v. *Jordan*, 164 Mass. 84, a case that cannot be distinguished from the present, where the plaintiff failed to recover for the same reason that the plaintiff fails here.

*Exceptions overruled.*