[No. 2670. Decided December 13, 1897.]

CHARLES A. HOFFMAN, *Respondent*, v. AMERICAN FOUNDRY COMPANY, *Appellant*.

MASTER AND SERVANT — DEFECTIVE APPLIANCES — INJURY TO EMPLOYE — CONTRIBUTORY NEGLIGENCE.

The duty of the master to furnish the servant reasonably safe tools, machinery and appliances with which to work, and the duty of the servant to exercise due care to avoid injury, are reciprocal obligations, and the duty of each is measured by the standard of ordinary care.

An employee who uses machinery which is in common and ordinary use in the line of business in which he is engaged, cannot be held liable for an accident whic.. might have been prevented by the use of different machinery.

Where there are two methods by which a service may be performed, one perilous and the other safe, an employee, who voluntarily chooses the perilous rather than the safe one, cannot recover for an injury thereby sustained.

In an action for personal injuries, it appeared that a shaft supported by brackets was run by a belt passing over the outside of a pulley; that on the shaft inside the brackets were collars fastened by set-screws, the heads of the latter projecting five-eighths of an inch; that there was no defect in pulley or belt, and that collars and screws of like character were in general use on similar machinery; that the belt slipped from the pulley while in rapid motion, and that plaintiff, without stopping the machinery, in attempting to replace the belt, which caught upon the projecting screw, was injured. Held, that the employer was not chargeable with negligence on account of the construction of the appliance used, but that plaintiff was negligent in attempting to adjust the belt while the machinery was in motion.

Appeal from Superior Court, Pierce County.—Hon. J. A. WILLIAMSON, Judge. Reversed.

*Crowley & Grosscup*, and *P. C. Sullivan*, for appellant.

*George W. Fogg*, for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was brought to recover damages for personal injuries sustained by plaintiff while employed as a workman in defendant's foundry. At the time of the injury respondent was engaged in operating machinery for breaking old iron car wheels. A portion of the machinery, consisting of a shaft, was run by a belt about thirty feet in length passing over the outside of a pulley. This shaft and pulley ran very rapidly, making about five hundred revolutions per minute. It was supported by two iron brackets about eight feet apart attached to the wall. Two iron collars and set screws were placed on the shaft *inside* the bracket for the purpose of preventing the lateral movement of the shaft. These collars were fastened by means of steel set screws (one on each collar), the heads of which projected five-eighths of an inch. On the 21st of July, 1896, while the machinery was in motion, this belt slipped off the right end of the pulley and fell between the pulley and the right hand bracket. The pulley was about ten feet from the floor. Respondent ascended a ladder, took hold of the belt about a foot below the shaft, and *in attempting* to lift it upon the pulley the belt was caught between the pulley and the bracket on the head of the set screw and wound about the shaft and the left arm of respondent, throwing him violently to the floor, resulting in the loss of the arm and in other injuries.

The negligence alleged in the complaint may be said to be the use of defective machinery and the negligent adjustment thereof. The plaintiff had been at work in the same capacity for the defendant about four months in all, prior to the time of the accident. The answer alleges that the injuries were occasioned solely by the carelessness and contributory negligence of the plaintiff in handling and managing the machinery; that the machinery itself and

appliances were exposed and visible to plaintiff, and safe for the purposes intended; that plaintiff had ample opportunity to examine the same to understand the workings thereof, and undertook the risk in connection therewith as a part of his employment. The trial resulted in a verdict and judgment for the plaintiff in the sum of $4,000, from which the defendant has appealed.

The gist of the action is negligence, and to entitle respondent to a recovery negligence must be shown. Respondent contends that by placing the collar and set screw inside, instead of outside, the bracket supporting the shaft and failing to countersink the set screw, the construction was faulty and the machine rendered highly dangerous. But the injury resulted, not from any defect in the machinery, but from the attempt to replace the belt while the shaft was revolving with great rapidity, and it is not contended that the belt left the pulley because of any defect— either of the pulley or belt. There was evidence tending to show that the method adopted by respondent to replace the belt would have been safe enough had there been nothing under the belt between the bracket and the end of the pulley but the smooth shaft, but it was rendered extremely dangerous and perilous by reason of the collar and projecting set screw, and the only safe and proper course to pursue in order to replace the belt under the circumstances would have been to notify the engineer to stop or slow down the engine. It was not claimed that there was any defect in the machinery itself, but that it was rendered dangerous by reason of the projecting set screw, and in that respect it could have been rendered safer by countersinking the screw or placing the collar on the outside of the bracket supporting the shaft. It is the duty of the master to furnish to the servant reasonably safe tools, machinery and appliances with which to work, and it is the servant's duty to

19--18 WASH.

exercise due care to avoid injury. These duties are recipro-
cal and exist by implication based upon the contract of em-
ployment. The implied duty of each is measured by the
standard of ordinary care. The law is well settled that the
master discharges his duty when he provides machinery
that is of ordinary character and reasonably safe. He is
not required to provide the newest and best. Employers
are not insurers and the law recognizes that absolute safety
is unattainable. They are liable for the results of their
negligence, and not for the dangers necessarily connected
with the service. The risks incident to the employment
are assumed by the person accepting such employment,
and in the absence of statutory provision prescribing the
kind or character of machinery to be used, or regulating
the manner of its use, an employer who uses machinery
which is in common and ordinary use in the line of business
in which he is engaged can not be held liable for an acci-
dent which might have been prevented by the use of dif-
ferent machinery. *Titus v. Bradford, B. & K. R. Co.*, 136
Pa. St. 618 (20 Atl. 517, 20 Am. St. Rep. 944); *Northern
Central Ry. Co. v. Husson*, 101 Pa. St. 1; *Hicks v. Sum-
ter Cotton Mills*, 39 S. C. 39 (17 S. E. 509); *Wormell v.
Maine Central R. R. Co.*, 79 Me. 397 (1 Am. St. Rep. 321,
10 Atl. 49); *Pittsburgh, etc., R. R. Co. v. Sentmeyer*, 92
Pa. St. 276 (37 Am. Rep. 684).

In *Ship Building Works v. Nuttall*, 119 Pa. St. 149
(13 Atl. 65), the court say:

" The test is general use. Tried by this test, the saw of
the defendant is such a one as the company had a right to
use, because it is such as is commonly used by mill own-
ers."

In *Titus v. Bradford, B. & K. R. Co.*, *supra*, one of the
best considered cases on the subject which we have been
able to find, it is said:

" No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed."

The evidence in this case shows—and the fact is not disputed—that machinery of the character under consideration (referring more particularly to the collars and set screws) is in common use in foundries and in other like shops. Assuming, then, that the effort of the respondent to replace the belt while the shaft was in rapid motion would have been safe had the set screw not projected, or if the collar had been on the outside of the bracket, and assuming that respondent was in ignorance of their actual condition or location, was he justified in assuming that there was no projecting set screw or that the collar was outside the bracket? What right had he to assume anything of the kind? If the conditions in these respects were such as commonly exist in other shops and foundries where like machinery is operated, then we think it must be conceded that plaintiff was himself negligent in attempting to replace the belt under such circumstances. He had no right to assume that the shaft was smooth, and that there was no projecting set screw, or no collar inside the bracket. All machinery is more or less dangerous, and it becomes the duty of persons connected therewith to familiarize and acquaint themselves with the dangers incident thereto. The work in which respondent was engaged did not involve any special risk of which it became appellant's duty to inform him. The collar and set screw were in plain sight when the machinery was not in action, and it is well nigh in-

conceivable that respondent could have worked around the machinery for four months without knowing its actual condition. He had no right to act on the bare supposition that different conditions existed and that machinery and appliances in common use in the same branch of business elsewhere, were not in use where he was employed. In the exercise of ordinary care and prudence he should either have ascertained the facts, or pursued a course known to be safe. In a case very similar to the present one this court has said:

" Men, when they are working around dangerous machinery, must notice. Their faculties and senses are given them for the purpose of self-preservation, and they must exercise them to a reasonable extent. . . .

" The dangers in this instance were apparent, and the law is well settled that an employé when he assumes his employment takes the risk of all apparent danger. This was the doctrine announced by this court in *Week v. Fremont Mill Co.*, 3 Wash. 629 (29 Pac. 215), and *Jennings v. Tacoma Ry. & Motor Co.*, 7. Wash. 275 (34 Pac. 937), and is the doctrine of common justice and right between employer and employé, and the doctrine of common sense." *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500 (37 Pac. 679).

See, also, Beach, Contributory Negligence, 138; *Wormell v. R. R. Co.*, *supra;* Bailey, Master's Liability for Injuries to Servants, p. 169; *Nelson v. Sandford Mills*, 89 Me. 219 (36 Atl. 79); *Russell v. Tillotson*, 140 Mass. 201 (4 N. E. 231).

In this case the slipping of the belt from the pulley was not due to the condition of the set screw, or to the location of the collar upon the shaft, or to any defect in the machinery itself; as already stated, the injury was due to the respondent's effort to replace the belt. There were two methods by which this could have been done, one of which was perfectly safe and the other beset with peril and danger. The rule is well settled that where there are two

methods by which a service may be performed, one perilous and the other safe, an employé, who voluntarily chooses the perilous rather than the safe one, can not recover for an injury thereby sustained. Bailey, Master's Liability for Injuries to Servant, p. 161, and authorities cited.

Upon the entire record it appears to us that plaintiff has no cause of action in law upon the facts relied upon, that the request of the appellant for a direction of the verdict should have been granted, that the verdict is contrary to law and to the evidence; and the judgment must be reversed and the cause remanded with direction to the lower court to dismiss.

Scott, C. J., and Dunbar, Anders and Reavis, JJ., concur.