### GREEN v. SOUTHERN RY.

MASTER AND SERVANT—RAILROADS—APPLIANCES.—A hostler, whose duty it is to shift engines, cannot recover for an injury occasioned by an engine's moving forward when the lever is put in backward gear and the steam put on, the lever flying from backward to forward gear, when he testifies that the defective working of the machine may have been occasioned by one of several causes without proof that either of these causes existed or caused the accident. Principles upon which the servant may recover for injuries caused by defective machines stated.

Before GARY, J., Greenville, March term, 1905. Affirmed.

Action by T. A. J. Green against Southern Railway Co. From order of nonsuit, plaintiff appeals.

*Messrs. McCullough & McSwain,* for appellant, cite: *Facts proved tend to show negligence on part of master:* 35 S. C., 406; 63 S. C., 575; 70 S. C., 494; 71 S. C., 81; 69 S. C., 395; 68 S. C., 403.

*Mr. T. P. Cothran,* contra, cites: *Proof of improper action in engine does not show negligence of master:* 66 S. C., 256; 69 S. C., 529; 66 S. C., 520; 34 S. C., 216; 39 S. C., 39; 19 S. C., 492, 510; 59 L. R. A., 787; 66 S. C., 525; 15 Am. Neg. Cas., 273; 166 U. S., 617; 179 U. S., 658.

October 7, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is an appeal from an order of nonsuit. The action is to recover the sum of $10,000 damages on account of personal injuries received the 17th day of May, 1903. The allegations of the complaint are: that at that time plaintiff was a hostler in the employ of the defendant Southern Railway Company; that, as hostler, it was his duty to shift engine No. 1072, which pulled in train No. 40, going north, and place it upon the side track to be inspected and repaired by the defendants, and when informed by them that the engine was ready, to place it upon the main track so that it might pull train No. 97, going south; that the engine was left standing near the turn-table pit, and after plaintiff was informed by the defendants that the engine was ready, he reversed the lever and turned on the steam, but instead of the engine going backward, as it would have done if it had been in proper repair, it moved immediately forward and fell into the turn-table pit, a depth of several feet, and plaintiff received the injuries mentioned in the complaint. The acts of negligence charged are: First, furnishing the plaintiff with a defective engine. Second, failing properly to inspect and repair the same.

At the conclusion of plaintiff's testimony, the Circuit Judge granted a nonsuit upon the ground "that there is no evidence tending to establish the allegations of negligence contained in the complaint."

The following is a statement of the material testimony: Plaintiff testified that after placing the engine upon the side track so that it might be inspected and repaired, as was the custom and duty of the defendants, he left it from fifty

minutes to an hour; the defendants West and Greeson were about the engine as plaintiff supposed for the purpose of inspecting and repairing the same, as was their duty; he did not see either of the defendants under the engine, but did see two of the "helpers," who were not expert machinists, under it; to properly inspect an engine it is necessary that the machinists should go underneath it; between the time that he left the engine and went back to it, the defendant Greeson was on the engine, and "moved the lever backwards and forwards to disconnect the valve stem;" after West and Greeson had finished their work upon the engine, Greeson told him that "No. 1072 was ready to move;" thereupon plaintiff mounted the engine and put the lever in reverse gear; he then reached for the bell cord, which was wrapped in some way, and after it was unwrapped, he "gave the engine steam and pulled the throttle open;" thereupon the lever. fell in head gear to where he had brought it from, and the engine instead of going backward, went forward into the pit, and he was injured; as hostler it was not his duty to inspect the engine, but if it had been his duty he could have discovered the defect by reasonable inspection. The witness did not undertake, however, to say what the defect was, but on the contrary, testified on cross-examination that he did not know what caused the reverse lever to fly from back gear to forward gear, but that it could have been caused by several things, viz: lost motion, loose springs, rough valve, weak springs, waste in the notch, or a piece of coal in the notch. It was dark when plaintiff was told the engine was ready to be pulled upon the main line, and he did not look down in the quadrant to see whether the latch of the lever went into the notch or not. "There is not an engineer on the road that does that. You cannot light a torch to see whether it is in or not." C. L. Cauble testified that he had been working for the Southern Railway Company for twenty-one years, and had been an engineer for seventeen years. He said: "If an engine, or locomotive, has its lever reversed, and the latch fastened in rear end of quadrant, and if steam be applied and

the reverse lever fly out of the notch and into forward end of the quadrant, I would say such engine is in a very defective condition. If the engine be just starting off, I do not think such thing possible, and I have not seen such in my experience." Edward Day, formerly a locomotive engineer of thirteen years experience, testified as follows: "Q. If an engine, a locomotive engine, would have its reverse lever reversed and put in back gear, and if when the steam be applied that engine moves forward by reason of the reverse lever flying forward, would you say that engine is in defective condition? A. Yes, sir. Q. What do you say as to that? A. I think it would be badly out of order if it would fly from back to front when steam is applied. Q. Do you think it would be possible for an engine which was standing perfectly still with its reverse lever in back gear for the reverse lever to fly forward upon the application of steam? A. Not unless she is in mighty bad shape, sir. If the engine was standing perfectly still and the reverse lever was in back gear, and when steam was applied she would have to be in a bad worn condition for it to fly forward. I never had one to do it with me. I have had them to fly out of gear and go down to where it was worn into head gear. As a general thing, they work considerably more in head gear than in back gear, which leaves the back latch gear and notches in good shape."

In every suit of a servant against a master for personal injury arising from the use of machinery, inquiry is directed mainly to two forces operating under natural laws, namely, the master's machine supplied to the servant, and the servant's mind and hands acting on the machine. The injury is usually due either to the error of the master in failing to supply safe machinery, or to the error of the servant in the use of his mind and hands, or to both of these causes acting together. But an error of the master in furnishing a defective machine does not conclusively imply negligence by the master, for he may have used due, and even great care in its selection; nor does an error of the servant in the use of the machinery conclusively imply negligence on his part, for he

26—72

may be in actual error while doing just what a prudent man would do under like circumstances. Neither the master nor the servant is charged with perfect knowledge of all natural laws and forces under which they act, nor even with error-less conduct in applying their imperfect knowledge of such laws and forces; and hence they are chargeable only with the results of errors which are due to negligence. The servant on entering the employment assumes the risk of his own errors, whether due to negligence or not, and he assumes also the risk of the operation of the machine and of the errors of the master unless the master fails to use due care in making the machine safe. When an injury to a servant is proved to result from a defective machine, the law puts upon the master the burden of proving that he used due care in making it safe. *Lasure* v. *Mfg. Co.*, 18 S. C., 275; *Carter* v. *Oliver Oil Co.*, 34 S. C., 211, 13 S. E., 419; *Branch* v. *Ry. Co.*, 35 S. C., 405, 14 S. E., 808. But when an accident happens by the breaking of a machine in ordinary use, and there is neither proof of defects in the machine nor of error in its use by the servant, the law will not draw first the inference that the machine was defective, and then from that inference infer the lack of care of the master. *Gentry* v. *Ry. Co.*, 66 S. C., 256, 44 S. E., 728; *Edgens* v. *Gaffney Mfg. Co.*, 69 S. C., 529. Natural forces beyond the control or foresight of the master, such as heat and cold and moisture, the action of outside persons having access to the machine without knowledge of the master, and, most probable of all, the unconscious errors of the servant in the use of·his mind and hands, may cause a perfect machine to break. These agencies are often as obscure and as little susceptible of being made evident as a latent defect in the machine itself. There-fore, aside from judicial authority, the rule of reason seems to be that it is not safe to infer latent defect in the machine from the fact of its breaking in what to all seeming is ordi-nary use, because experience teaches the breaking may be due to imperfectly known natural forces, or to unconscious and

undiscoverable errors of the human mind and hand controlling the machine.

"It sometimes happens, however, that a description of the appliance and of the nature of the accident will indicate negligence by the master in providing appliances which he could not, as a reasonable man, regard adequate for the purpose for which they were used. But this is an inference from proof of the circumstances or physical facts as given in evidence, and not a presumption of law." *Edgens* v. *Gaffney Mfg. Co.*, 69 S. C., 529; *Gentry* v. *Ry. Co., supra; Hicks* v. *Sumter Mills,* 39 S. C., 39, 17 S. E., 509. Proof of negligence is a condition precedent to the liability of the master. The proof may be either direct or circumstantial, but the plaintiff must assume the burden of furnishing evidence of one kind or the other. ·

We now consider the facts of this case in the light of the principles above stated. It is not contended there is proof or any specific defect in the engine, or negligence on the part of the railroad company. The inquiry then is, does the case fall within the doctrine of *res ipsa loquitur?* The engineers put up as expert witnesses testified if the catch of the lever of an engine fastened in the notch in the rear of the quadrant flies out and into the forward end of the quadrant, they would regard the engine in a very defective or worn condition. Neither of them said, in so many words, in what respect the engine would have to be defective or worn for this result to be produced, but it is sufficiently manifest they meant the catch of the lever or the notch on the quadrant would have to be so much worn as not to hold fast. Both said they never had such a thing to happen when the engine was standing still, and one said, in his opinion, it was not possible for it to happen. There was not the slightest evidence that either the catch or the notch was worn. The strong proof to the contrary was that both had worked satisfactorily several times under the hand of the plaintiff within an hour before the accident.

The plaintiff himself testified he did not know what caused the accident; that it could have been produced by any one of five causes: (1) A piece of waste in the notch of the quadrant, which would prevent the latch on the lever from catching; (2) a piece of coal similarly lodged; (3) a weak spring to the latch on the lever not forcing the latch into the notch on the quadrant; (4) lost motion in the links; (5) a rough valve. Assuming that the defendant would be responsible for all these possible defects, if they existed, the plaintiff does not say the accident was not or might not have been due to other causes for which the defendant was not responsible, nor is there the slightest evidence that any of the conditions mentioned by him as possible causes were present.

The cause of the accident is purely conjectural. There is no more reason to suppose it was due to a defect in the machine than to an unconscious error of the plaintiff in its operation, or to some other undiscoverable cause for which neither party was responsible. "A servant cannot recover where it is merely a matter of conjecture, surmise, speculation, or supposition, whether the injury was or was not due to the negligence of the master." 2 Labatt on Master & Servant, section 837.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

THE CHIEF JUSTICE *did not participate in this opinion because of illness.*