Euzebe Michaud *vs.* Leslie H. Taylor

Aroostook.    Opinion, July 28, 1942.

*Arthur J. Nadeau,* for the plaintiff.

*Doherty & Brown* by *Scott Brown,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J. The defendant herein, following a jury verdict of $2,552 for the plaintiff, seeks new trial on a general motion containing the usual allegations. Several exceptions to rulings on evidence were taken during the trial below but they are not pressed here, nor is the allegation of the motion that the damages awarded were excessive. Decision must rest upon determination that the evidence did, or did not, justify jury findings (1) that the servant of the defendant was negligent,

and (2) that no negligence of the plaintiff contributed in a causative way to produce the accident, as well as that the plaintiff was neither an employee of defendant nor one who was riding upon the truck by consent only of a servant of defendant who had no authority to permit him so to do.

Defendant employed plaintiff to pick a crop of potatoes, to assemble a crew for the purpose, board that crew, and supervise its work, and defendant, by his own labor or that of his regular employees, was to do, and did, the digging, and provide transport for the potatoes from the field to the place of storage. The compensation of plaintiff, which was on a per bushel basis, was to cover the work and board of plaintiff and his crew, and there was no undertaking by the defendant to carry the crew to and from the potato field, although the defendant did send his truck to transport plaintiff and his goods from home to the farm where the work was to be performed.

The accident occurred at the close of the first day's picking. At that time defendant's truck was loaded, not quite fully, with approximately 27 barrels of potatoes, and the plaintiff and his crew climbed aboard before it started out of the field. It is not claimed that plaintiff had any work to perform in connection with unloading the potatoes and placing them in storage, but the truck was to proceed along the route which plaintiff would take in going to his living quarters and the work stopped early that the men might fix up their beds and meals. Plaintiff took a position on the right hand side of the truck a few feet back of the cab and stood on a narrow ledge (8 or 9 inches wide) outside the barrels and astride a chain which passed around them about 15 inches above the floor of the truck. The distance traveled to the main highway and along that highway is not entirely clear on the record, and there is a very definite conflict in the evidence as to the speed of the truck during the several parts of the journey — particularly at the turn into the potato house — but it is entirely established that the barrels were not securely and compactly bound in by the chain, that there was a "jerk" when the turn

was made, that a particular barrel, to which the plaintiff was holding, tilted or tipped as the jerk occurred, and that it was at this particular point where he fell, or was thrown, from the truck and suffered a broken leg when the right rear wheel of the truck passed over it. It is not in dispute that the defendant was close enough to the truck when the plaintiff and his crew climbed aboard for their ride so that they were in plain view (had he looked) and within the sound of his voice, but he denied that he saw them do so. The plaintiff testified that the defendant assented to the early stoppage of work.

Consideration must be given to the case within the well established rules (1) that a jury verdict should not be set aside unless it is "clearly and unmistakably wrong," *McNerney* v. *Inhabitants of East Livermore,* 83 Me., 449, 22 A., 372; *Searles* v. *Ross et al.,* 134 Me., 77, 181 A., 820; *Marr* v. *Hicks,* 136 Me., 33, 1 A. (2d), 271; *Plante* v. *Canadian National Railways et al.,* 138 Me., 215, 23 A. (2d), 814; and (2) that in the absence of exceptions to the charge given to the jury, or to the refusal of particularly requested instructions, it must be assumed that proper charge was given on each and every point necessary to a proper determination of the case. *Frye* v. *Kenney,* 136 Me., 112, 3 A. (2d), 433.

Allegation in the declaration is that defendant's servant was negligently driving the truck at the time of the accident at an excessive and immoderate rate of speed, and that in turning from the public highway into the driveway leading to the defendant's storehouse, he suddenly shifted the gear lever in an abrupt and jerky manner and negligently caused the truck to be jerked and reduced in speed, by reason whereof the plaintiff was thrown to the ground. Evidence as to speed, both at the point where the accident occurred and during the time when the truck was traveling along the highway, was sharply conflicting, but proof was plenary that there was a jerk at the point of turning and that the plaintiff's fall from the truck was coincidental with that jerk.

There was considerable evidence in the case, introduced

through witnesses presented by the plaintiff, that the speed of the truck when the turn was made was 20 miles an hour or more, but one of these witnesses admitted on cross-examination that he had earlier estimated it at only half that rate. Defendant relies on the claim that the evidence of the greater rate of speed was so inherently impossible, in view of the proved location of the potato warehouse with reference to the point of turning, as to bring the case within the rule declared in *Blumenthal* v. *Boston & Maine Railroad,* 97 Me., 255, 54 A., 747, and asserts, without any citation of authority, that "estimates" of speed which are inconsistent with established facts should be "disregarded." If decision of the cause in favor of the defendant could properly be grounded on determination that the turn was made at a speed of from 10 to 15 miles per hour, as was estimated by the single defense witness who testified on the question, and not at 20 miles an hour or more, as the fact was fixed in all of the testimony offered on behalf of the plaintiff (except the one witness whose direct testimony on the point was shattered in cross-examination), there would be sound reason to urge the application of the principle declared in the *Blumenthal* case, supra, that, since plaintiff's testimony could not "by any possibility be true," it did not "raise an issue of fact which should have been submitted to the jury." The potato house, as is clear from all the testimony in the case, was located so close to the highway at the point of turning that it is apparent the speed estimates of the plaintiff and his witnesses must represent exaggerations. The issue, however, is not the rate of speed but whether the actual speed, whatever it may have been, was so excessive and immoderate, "having regard for the circumstances and conditions" attending, as to constitute actionable negligence in view of the "jerk" which undoubtedly occurred. The jury found this issue of fact in favor of the plaintiff, and on the record presented there is no occasion for this Court to say that the finding is "clearly and unmistakably wrong."

Defendant relies also upon the declaration of Chief Justice

Peters in *Nelson* v. *Sanford Mills*, 89 Me., 219, 36 A., 79, recognizing that there is a class of cases wherein "a plaintiff is debarred from recovering for an injury because he has contributed in causing the injury by his own unjustifiable and foolhardy conduct," notwithstanding the defendant might also have been guilty of negligence which cooperated with his in producing the result. The opinion in that case does not purport to define the class with any definiteness, but it is there stated that there are quite a number of cases in this State which directly or indirectly support the rule, and citation is made to three of them. The particular case involved the right of an elevator operator to recover for injuries suffered when a heavily loaded carriage came down suddenly on his hand, as he was jerking a misplaced chain, to throw it back into place. Two of the cited cases involve (1) a railway brakeman injured when leaning out from the steps of a moving car to look at the wheels, *Walker, Admr.* v. *Redington Lumber Co.*, 86 Me., 191, 29 A., 979, and (2) a workman falling from a box onto which he had climbed in an attempt to open a sliding door which he knew to be resting on a defective truck, *Conley* v. *American Express Co.*, 87 Me., 352, 32 A., 965. *Wormell* v. *Maine Central Railroad Co.*, 79 Me., 397, 10 A., 49, where a machinist in a railway shop was injured while coupling cars (work which was no part of his employment and with which he was not familiar) was declared to be somewhat typical of the class.

We cannot hold, as matter of law, that plaintiff's position in this case, in standing on the narrow ledge of the truck outside the barrels and straddling the chain which passed around them had placed himself so clearly in a position of peril as to bring his case within the rule of foolhardy conduct adverted to in *Nelson* v. *Sanford Mills*, supra. The record discloses that he maintained the position while the truck traversed the distance from its point of loading across the potato field and along the main highway, whatever the speed of the truck may have been, until the jerk occurred in making the turn. In *Webb, Adm'r.* v. *Portland & Kennebec Railroad Co.*, 57 Me., 117, this Court

recognized the rule stated in *Patterson* v. *Wallace*, 28 Eng. Law and Eq. 48, that in a case in which the only question was:

"whether a certain result was to be attributed to negligence on the one side or rashness on the other, the judgment of the court below was reversed because the judge had withdrawn the case from the jury, and it was held in the House of Lords to be a pure question of fact for the jury."

It had earlier been decided, in *Keith* v. *Pinkham*, 43 Me., 501, 69 Am. Dec., 80, that although a passenger in a stagecoach might properly be held to assume the peculiar risks incurred in riding in an exposed situation outside the coach, he could not be held thereby to have assumed risks "resulting from the negligence of the defendant or those in his employ." It was there declared, in sustaining the refusal of a requested instruction that would have taken the issue from the jury that the fact that the plaintiff took his position outside "was a circumstance proper for the consideration of the jury in determining whether his negligence contributed in any way to the production of the injury." This principle underlies in part the rule applicable in cases when a passenger on a street railway car suffers injuries while riding upon the car platform rather than in a seat, *Watson* v. *Portland & Cape Elizabeth Railway Co.*, 91 Me., 584, 40 A., 699, 44 L. R. A., 157, 64 Am. St. Rep., 268; *Blair, Adm'r.* v. *Lewiston, Augusta and Waterville Street Railway*, 110 Me., 235, 85 A., 792. In the latter case Mr. Justice King declared that the issue as to whether the plaintiff's position constituted such negligence as would bar his recovery was "clearly one that should have been submitted to the jury."

Additional questions involved in the case might be said to be whether or not the situation of the plaintiff was such, either because of his status as an employee of defendant, or because he was riding on defendant's truck only by the consent of a servant who had no authority to permit him so to do, that he must be held to have assumed the risk which caused the in-

jury or, in the first named contingency, to be barred from recovery because the negligence with which defendant is charged was that of a fellow servant. As to the existence of the employer-employee relationship, there can be no doubt that the factual finding for the plaintiff, implicit in the verdict, that such did not exist, has competent support in the record. On the other point, we recognize that the New Jersey Courts draw a careful distinction as to the duty of care of a motor vehicle owner between passengers traveling by invitation and those riding "at their own solicitation," as appears by two cases decided in the Supreme Court of that State, which are cited by the defense, *Faggioni et al.* v. *Weiss,* 99 N. J. L., 157, 122 A., 840; *Rose* v. *Squires et al.,* 101 N. J. L., 438, 128 A., 880, 881. The latter was affirmed in the Court of Errors and Appeals (102 N. J. L., 449, 133 A., 488) by "a majority of the quorum" only, it being expressly stated in a Per Curiam opinion that no principle of law applicable to the case had received the sanction of a majority of the nine members of the Supreme Court. The New Jersey rule has never been adopted in this State and the factual proof before us offers little reason to urge it in the present case. In *Hoar, Adm'x.* v. *Maine Central Railroad Co.,* 70 Me., 65, 35 Am. Rep., 299, a declaration was held bad which sought to ground liability on the defendant as a common carrier in favor of a plaintiff who was injured while riding gratuitously on a hand-car at the invitation of the section foreman who had it in charge. Decision was based, however, not on the fact that the rider was a mere trespasser or licensee, but rather on the ground that where the risk of a particular mode of conveyance is greater than normal, he who adopts it assumes "the extra risks arising therefrom, and must be held to abide the unfortunate consequences." This is part and parcel of the principle declared in *Keith* v. *Pinkham,* supra.

We must give our consideration to the case on the assumption that the members of the jury were properly instructed on this last point as on every other; that their verdict is predicated on findings that defendant's servant was negligent while plain-

tiff was not, so far as cause contributing to the accident is concerned; and that the negligence of the servant infringed that duty of care which the defendant owed to the plaintiff under the particular facts of the case. On the record no one of these findings should be disturbed.                    *Motion overruled.*