### CARTER v. OLIVER OIL COMPANY.

1. MASTER AND SERVANT—APPLIANCES.—The master must furnish safe and suitable appliances, such as reasonable and prudent persons would ordinarily use under similar circumstances, for the performance of the duty required of the servant, and must see that they are kept in proper repair.   These duties cannot be delegated to another so as to exonerate the master from liability for injuries sustained through their omission.

2. NEGLIGENCE—FACTS FOR THE JURY.—Whether facts are sufficient to prove negligence is for the jury.   A non-suit is proper only where there are no facts tending to prove the charge.

3. IBID.—NON-SUIT.—The evidence tended to show that a servant in an oil mill while operating a "former" machine, was required to use sacks which were dangerous when torn; that another servant was charged with the duty of keeping these sacks in proper repair; that the first servant, required to act rapidly, took the sack nearest to hand, and his thumb catching in a hole his hand was thereby caught in the "former" machine and injured.   *Held,* in action by this servant against the master to recover damages for this injury, that a non-suit was improperly granted.

4. CONTRIBUTORY NEGLIGENCE is a matter of defence which cannot be considered under a motion for non-suit.

5. MASTER AND SERVANT—APPLIANCES.—The servant has a right to assume, unless he knows to the contrary, that the appliances furnished him are safe and suitable, as it is the master's duty so to provide.

6. CASE CRITICISED.—*Davis* v. *Railroad Company*, 21 S. C., 93, explained and distinguished from this case.

Before WALLACE, J., Richland, April, 1890.

Action by Richard Carter against the Oliver Oil Company, commenced August 12, 1889.   The judge, in granting the non-suit, said:

As I collect the proof, it appears that Richard Carter was the chief hand in working the former. It was his duty to reach up and get what they call the bags and throw them on that pan-shaped piece of iron there, and after he had done that, then by steam machinery the ground cotton seed was emptied on the bag, and then it was pushed. It seems to me, under these circumstances Carter was absolute master of the situation and could control everything; he let his hand stay there if he wanted to and refuse to pull up the lever; or let his hand stay there and pull up the lever and crush it. He could make the operation fast or slow after he pulls it; it didn't come until he pulled, so now he needn't pull while his hand was there. He might have let that lever stay where it was until he had plenty of time to get his hand away and readjust the bag.

As I understand, too, he was not obliged to use that bag; there were other bags. When he spread out the bag, if it was unfit for use, he could roll it up and throw it over his shoulder. I do not see where negligence of the company comes in at all anywhere. There is nothing to show that *that* was the only bag furnished by the company. The proof is a number of other bags were furnished by the company and put on top of the former. He could take those sacks down and spread them out when the little railway carriage was under the former, and he could see whether they were fit to use or not; if unfit to use, all he had to do was to bundle it up and throw it over his shoulder, when others took it away and had it repaired. I do not see where negligence of the company comes in.

You will remember the case of *Davis* v. *Railroad*, in which the conductor used a defective lantern, while there were good lanterns he might have used; the court held there was no negligence. Carter could have used that bag that he did use or not, as he saw fit. We are obliged to assume there were good bags there, because the operation was constantly going on and nobody got hurt. It was in his power to use good bags; instead of that he used a bag which he says was defective; he needn't have done it. It was no negligence in the company for Carter to use a defective bag when he had the option to take a good one. It may have been his duty to have worked rapidly, and that increased

the danger of the service, still he knew it; he knew he had to work rapidly, and that increased the danger of the service—that did not render it necessary that he should do any act necessarily involving his personal injury.

I do not see where the negligence of the company comes in at all. Even if that bag had a hole in it, and even if Carter stuck his fingers through that hole, he had the option not to do it; and after he had stuck his finger through the hole, then he had the option not to pull that lever and bring up the former and mash his hand. I don't see what else the company could have done. They did the best they could to repair these sacks, and left it to Carter to say whether he would use one of these or not, and he chose to use it. I cannot see the shadow of negligence on the part of the company, and must therefore grant the motion.

*Messrs. Melton & Melton*, for appellant.

*Mr. J. C. Haskell*, contra.

July 18, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiff brought this action to recover damages for injuries sustained while in the employment of the defendant company, under the allegation that the injuries sustained resulted from the negligence of the company in furnishing the plaintiff with safe and suitable appliances to do the work for which he was employed. The testimony tends to show that plaintiff was employed by defendant to operate a machine in their oil mill, called a former, whereby the cotton seed meal was pressed into cakes; and that the work required of the plaintiff had to be done rapidly to prevent the meal from burning; that the plaintiff, standing at the machine, was supplied by other servants of the defendant company with bags or sacks, which plaintiff with the assistance of another had to place in the machine; that these bags or sacks were placed in a pile on the top of the machine, and when one was wanted, the plaintiff reached up and took one off the pile, which had to be done with rapidity; that it was very necessary for the safety of the person operating the machine that these bags or sacks should be free from holes or

rents. and therefore another person was employed to repair any torn sacks; that the disaster which gave rise to this action probably resulted from the use of a sack with a hole in it, whereby plaintiff's finger became entangled in it and his hand was crushed. There was also some testimony tending to show that if the person operating the machine discovered any hole or rent in the sack when taken off the pile, he would throw it over his shoulder, when it would be taken to the person charged with the duty of repairing the sacks.

Upon the testimony thus briefly outlined, his honor, Judge Wallace, held that there was an entire absence of any testimony tending to show any negligence on the part of the defendant company, and therefore rendered a judgment of non-suit, from which the plaintiff appeals upon the grounds set out in the record, which make the single question whether there was such an entire absence of testimony tending to show negligence on the part of the defendant as would warrant the granting of a non-suit.

The rule is well settled that it is the duty of the master to furnish safe and suitable appliances for the performance of the work required of the servant, and also to see that the same are kept in proper repair, and hence where either of these duties has not been performed, there is an omission of duty on the part of the master, which affords at least *prima facie* evidence of negligence on his part; for these duties cannot be delegated to another so as to relieve the master from liability to another for injuries sustained by reason of a failure to perform them properly. *Gunter* v. *Graniteville Manufacturing Co.*, 18 S. C., 262. This general statement of the rule is not to be construed as implying that the master is bound to provide appliances which shall prove to be absolutely safe under all contingencies, or even such as are of the best and most approved description; but, as said in the case cited, "only such as a reasonable and prudent person would ordinarily have used under similar circumstances." In other words, the rule does not require of the master the greatest care possible, but only such as prudent persons usually exercise under similar circumstances.

This being the rule, the inquiry is whether there was in this case any evidence tending to show an absence of such care on the

part of the defendant; not whether the testimony adduced was sufficient to prove negligence, as that is a matter exclusively for the jury, and we have neither the power nor the disposition to consider that question. It seems to us that there was some testimony tending to show an omission of duty on the part of the master in furnishing the plaintiff with safe appliances to do the work required of him, for there is some testimony tending to show that the injury complained of resulted from the fact that the plaintiff was furnished with a torn sack, and also some testimony to show that the use of such a sack was dangerous. It is true that there is also testimony tending to show that the defendant had employed another person charged with the special duty of repairing the sacks; yet if it shall appear that this duty was negligently performed, such negligence would be imputable to the master under the rule above stated, which requires that the master shall not only provide safe and suitable appliances in the first instance, but also see that the same are kept in repair, and the delegation of this duty to another cannot relieve the master from responsibility.

The Circuit Judge seemed to base his conclusion upon the fact that the testimony not only did not tend to show that the defective sack which was used was the only one furnished, but, on the contrary, there was evidence tending to show that a number of other sacks were furnished, some of which he assumed were free from any defect, and hence no negligence could be imputed to defendant causing the injury complained of, as plaintiff had been furnished with good sacks, and it was his own act to use one that was defective; citing and relying on the case of *Davis* v. *Railroad Company*, 21 S. C., 93. Before proceeding to point out the distinction between this case and that of Davis, we may remark that the view taken by the Circuit Judge seems to be based upon the idea that Carter, the plaintiff, was guilty of contributory negligence, and therefore could not maintain his action. It may be that such was the fact, but it is well settled, in this State at least, that the question of contributory negligence cannot be considered under a motion for a nonsuit.

But again, the rule is that it is the duty of the master and not

of the servant to exercise due care and diligence to ascertain whether the appliances furnished are safe and suitable; and a servant has a right to assume, without inquiry or examination, that the appliances furnished him are safe and suitable. *Lasure* v. *Graniteville Manufacturing Co.*, 18 S. C., 281. Of course, if he uses a machine or other appliance, knowing at the time that it is out of repair to such an extent as to render it unsafe, then another rule applies, with certain qualifications which it is needless to state here.

It does not seem to us that the case of *Davis* v. *Railroad Company, supra,* relied upon by the Circuit Judge, applies.[1] In that case the plaintiff was on the top of the train waving his lantern as a signal to an approaching train, when the cup of his lantern fell out. The plaintiff, however, did not then sustain the injury complained of; but by reason of the loss of the cup of his lantern he had to descend into the cab to procure another, and in returning to his post on the top of the train was struck by the projecting timbers of a tank, while ascending the ladder leading to the top of the car. The question whether there was any negligence on the part of the company in furnishing the plaintiff with a defective lantern was decided upon the ground that there was really no evidence that the lantern from which the cup dropped was defective, except the simple expression of opinion by one of the witnesses that the cup dropped out because of a defect in the lantern. That might very well have happened from some other cause than a defect in the lantern, and no witness testified that he had ever examined or even seen the lantern in question.

It is true that the late Chief Justice, in delivering the opinion of the court, after commenting on the fact that there was no evidence tending to show any defect in the lantern, does use this language: "We find not a word in the testimony on that subject, at least none to the precise point necessary to inculpate the defendant, to wit, that the deceased was using a defective lantern because of the fact that defendant had negligently furnished him with such; on the contrary, it appears that the deceased procured another from the cab, which we suppose was safe and per-

[1] See *Altee* v. *Railroad Company,* 21 S. C., 557.

fect, as there is no testimony to the contrary. He might have taken that one at the first. That he did not was perhaps his own negligence rather than that of the company. We think there was an entire absence of all testimony directed to the negligence of the company as to the lantern." It is obvious that this language was not used for the purpose of laying down the doctrine that it was the duty of the servant to examine the appliances provided by the master for his use, as that would be inconsistent with the decision in Lasure's case, *supra,* and certainly not for the purpose of indicating that the doctrine of contributory negligence could be considered on a motion for a non-suit, as that would have been in conflict with numerous cases then recently decided; but it was only designed to show that in addition to the fact that there was no evidence to show that the defendant company had furnished the plaintiff with a defective lantern; the evidence, on the contrary, tended to show that safe and suitable lanterns had been furnished by the company for the use of its servants, and if there was any fault at all, it lay with the plaintiff rather than the defendant. Besides, in this case the testimony tended to show that the work required of the plaintiff had to be done so quickly as to afford no time or opportunity for him to examine the sacks furnished him, whereas it was not so in the case of the lanterns.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.