7590

## GILLILAND v. CHARLESTON & WESTERN CAROLINA RY.

1. RAILROADS—NEGLIGENCE.—That a coupling device on a railroad train is in such condition that it would not couple automatically on compact, which it would do when in ordinary repair, under the evidence here tends to show negligence on part of railroad.

2. IBID.—IBID.—CONTRIBUTORY NEGLIGENCE.—That a brakeman attempted to kick a coupler into position in the presenec of the conductor without objection, that he had seen that conductor and other officials do it in that way, do not show negligence *per se* on part of servant.

3. APPEAL.—Where the question that plaintiff had assumed the risk was not made below by motion for nonsuit or new trial, it will not be considered here.

Before C. C. FEATHERSTONE, Special Judge, Greenville, June Term, 1909. Affirmed.

Action by Samuel Gilliland against Charleston & Western Carolina Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *Evidence does not show defect in instrumentalities:* 39 S. C., 39; 66 S. C., 256; 69 S. C., 529; 72 S. C., 398. *Plaintiff was guilty of contributory negligence:* 77 S. C., 328, 42 S. E., 989, 61 S. E., 292. *Plaintiff assumed risks:* 80 S. C., 232. *Plaintiff's kick broke the continuity between defendant's negligence and injury:* Watson Per. Inj., sec. 82, 52 S. E., 627; 67 S. W., 90; 51 At., 718; 63 Fed., 400; 67 S. C., 290; 21 S. C., 93; 90 Ala., 32; 32 At., 965; 63 N. W., 517; 93 Ga., 590.

*Messrs. Jos. A. McCullough* and *Geo. M. Pritchard,* contra. *Mr. McCullough* cites: *Whether the defective appliance was the proximate cause of the injury was for the jury:* 68 S. C., 55; 65 S. C., 430; 38 S. C., 199; 116 Fed. R., 868; 129 Fed. R., 522. *Kicking coupler was not*

*negligence, per se:* 68 S. C., 55; 138 Ala., 487; 81 S. C., 522; 82 S. C., 533; 60 S. C., 9; 191 U. S., 247. *Appliances required by act of Congress:* 194 U. S., 136.

May 11, 1910.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence of the defendant.

The acts of negligence on the part of the defendant, and the detailed manner in which the plaintiff was injured, are thus alleged in the complaint:

"Plaintiff was ordered by the conductor to couple the engine to the box car next to it, upon the sidetrack, which was engaged in handling interstate traffic, and signalled the engine back, for the purpose of making such coupling.    That the said box car was provided with an automatic coupler, which was manipulated by means of a crank projecting upon the side of the car, and by means of which the car could be coupled or uncoupled, without necessitating one's going between said cars for such purpose, and if the said coupler had been, on this occasion, in proper condition, the said coupling. would have been effected without necessitating plaintiff's using his hands or feet for the purpose of effecting the said coupling, and the injury which plaintiff sustained as heretofore complained of, would have been avoided; but the defendant carelessly and negligently permitted the said coupler to become defective and out of ordinary repair, so that when plaintiff attempted to adjust the lips by manipulating the crank, one of the lips of the coupler would not open, as it would have done, had the coupler been in ordinary repair, and the said coupling was not made when the engine backed; thereupon the plaintiff signed the engineer forward for the purpose of adjusting the said coupler with his hand, which he did, and taking his position on the side of the car, he

signed the engineer back. When plaintiff signed the engineer back for the second time, for the purpose of making the said coupling, when the said engine was within what appeared to the plaintiff to be a safe distance from the coupler, plaintiff first observed that the bumpers on the said box car and engine were out of adjustment and would not match, and in order for the coupling to be effected, force would have to be applied to the bumpers for the purpose of putting them in position where they would match and come together, so as to couple by impact. It appeared to the plaintiff, and upon information and belief, plaintiff alleges that it would so appear to any man of ordinary prudence and foresight, that by pushing with his hand or kicking with his foot, the bumper attached to the engine, that the said coupling could be effected, and while the engine was backing, as the plaintiff then believed, at a slow rate of speed, and it appearing perfectly safe to do so, and it being rendered necessary by reason of the worn and defective condition of the bumpers, which were out of repair, due to the carelessness and negligence of the defendant, plaintiff did kick the said bumper as it approached the box car, using all due care, when suddenly and unexpectedly the said engine backed at a greater rate of speed than plaintiff was accustomed, or had a right to expect, and his left foot was caught between the said bumpers and horribly mangled to such an extent as to necessitate amputation.

"The plaintiff alleges that in applying his foot to the said bumper he observed a custom which had been in vogue upon the defendant's road, with its knowledge and consent since his employ, and for several years; that he had never been warned of the danger incident thereto; that he had frequently pursued this method when necessary in the presence of the conductor and other employees of the said road; that he has often seen the conductor himself pursue the same method; that in his effort to effect the coupling in this manner, in the presence of the conductor of the defend-

ant railway, and under his immediate supervision, that he adopted what appeared to him to be the safest method, and one with no risk attached, and the plaintiff exercised due care and caution, and in doing the work, acted as a man of ordinary firmness and prudence would have acted, as he is informed and believes under the circumstances."

The defendant denied the allegations of negligence and set up the defenses of contributory negligence and assumption of risk.

At the close of the plaintiff's testimony, the defendant's attorneys made a motion for a nonsuit, on the grounds that there was no evidence of negligence on the part of the defendant, and that the testimony showed that the plaintiff was guilty of contributory negligence. The motion was refused.

The jury rendered a verdict in favor of the plaintiff for $5,000.

Thereafter, the defendant made a motion for a new trial, and for an order revoking the order refusing the nonsuit, on the same grounds as those urged upon the motion for nonsuit.

This motion was also refused, and the defendant appealed upon exceptions which present practically but two questions: (1) Whether there was any testimony tending to sustain the allegations of the complaint as to negligence, and (2) whether the testimony showed that the plaintiff was guilty of contributory negligence.

We will consider, first, whether there was any testimony tending to show negligence on the part of the defendant.

1. The plaintiff testified as follows: "Q. What were you required to do? A. To couple up the cars on the sidetrack. Q. Who ordered you to do that? A. The conductor. Q. State whether or not he was there present superintending and supervising your work? A. Yes, sir; he was there. Q. What did you do when the engine came back on the sidetrack? A. It came back and hit

the first time and the coupling wouldn't make. Q. Why wouldn't it make? A. Because it wouldn't match. Q. What do you mean by that? A. It didn't hit right. They have got to hit right before they will go together and the pin will fasten. It has one way to fall. It was too far to one side. They have a play backwards and forth, and it was pushed a little too far one way. Q. If the coupler had been in ordinary condition and worked as it was intended to work, what would have been their position? A. They would match. Q. Why wouldn't this coupling match? A. Because one was pushed too far to one side. Q. Was that the way it was intended to work? A. No, sir. Q. How was it intended to work? A. It ought to work in the center. They have a play, and they ought to go backwards and forwards. I don't know how far. That one was not fixed right, and it needed adjustment. Q. Did it couple when the engine came back? A. No, sir. Q. State whether or not if it had been in proper condition it would have coupled when it was back.

"Objected to by Mr. Cothran: The witness has not said it was out of order, or that there was a defect in it.

"Q. Was there a defect in that coupling? A. Yes, sir; there was a lip on the car, and it wouldn't open. Q. I believe you stated awhile ago, when they were working right, when they come together, they ought to couple? A. Yes, sir."

John Huntsinger, a witness for the plaintiff, thus testified: "Q. Are you familiar with the automatic coupler, the coupling we have been talking about, coupled by the manipulation of a crank on the side of the cars? A. Yes, sir. Q. I wish you would tell the jury whether or not, where the bumpers and the couplings are in ordinary repair on an engine and a box car, notwithstanding the play which the bumpers necessarily have, whether if they are in ordinary repair when they come together, will they couple or not? A. Yes, sir; they will couple. In some

cases on a sharp curve you have to open both nipples, we call them, on the end of the drawhead; the drawhead extends through the cars, and when they come together, if the curve is very sharp, and they are worn the least bit, they won't couple, and we then open both nipples. Q. Suppose you are not on a curve, but on a straight line? A. Well, sir, they ought to couple anywhere."

There is other testimony to the same effect, which it is unnecessary to reproduce.

This testimony tends to sustain the allegations of negligence set out in the complaint, and the exceptions raising this question are overruled.

We will consider next whether the testimony showed that there was contributory negligence on the part of the plaintiff.

The plaintiff testified as follows: "Q. You say that you had pursued this method before? A. Yes, sir. Q. State whether or not it was in the presence of the conductor? A. Yes, sir; it was. Q. Tell the jury whether or not—you say that you had been brakeman about a week? A. Yes, sir. Q. Tell the jury whether or not you had ever been warned as to any such custom being dangerous? A. No, sir. Q. Tell then, whether or not you had seen the conductor and other officials of the railroad do the same thing? A. Yes, sir. Q. Had you seen this conductor do it, the man in charge of this train? A. Yes, sir. Q. State whether or not this particular conductor was right there and saw you doing this work. A. Yes, sir. Q. Did he make any objection to it, the way you were doing it? A. No, sir."

Under such circumstances it can not be said that there was negligence *per se* on the part of the plaintiff. *Youngblood* v. *Ry.*, 60 S. C., 9, 38 S. E., 232; *Carson* v. *Ry.*, 68 S. C., 55, 46 S. E., 525; *Hall* v. *Ry.*, 81 S. C., 522, 62 S. E., 848; *Brown* v. *Ry.*, 82 S. C., 528; *Lyon* v. *Ry.*, 84 S. C., 364.

We have not discussed the question whether it appeared from the evidence, that the plaintiff assumed the risk which caused the injury, as this was not made a ground for nonsuit, or for a new trial.

We may say, however, that the testimony does not show that he assumed such risk.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.