### HOPKINS v. SOUTHERN COTTON OIL CO.

#### (142 S. E., 615)

1. MASTER AND SERVANT—EVIDENCE HELD SUFFICIENT TO TAKE TO JURY QUESTION WHETHER OIL PRESS, INJURING OPERATOR, WAS DEFECTIVE AND SHOULD HAVE BEEN REPAIRED.—In action for injuries sustained by operator of cotton oil press on breaking of machine, evidence *held* sufficient to take case to jury on issues whether machinery was defective, whether master was chargeable with notice thereof, and whether master should have repaired machine.

2. MASTER AND SERVANT—EVIDENCE OF PREVIOUS BREAKING DOWN OF MACHINE CAUSING INJURY TO OPERATOR HELD ADMISSIBLE IN ACTION FOR INJURIES.—In action for injuries sustained by operator of cotton oil press when it broke, evidence of previous breaking of same machine while being operated by another employee in the same way and under same conditions *held* admissible.

3. MASTER AND SERVANT—KNOWLEDGE OF DEFECTIVE CONDITION OF MACHINE IS IMPUTABLE TO MASTER, EVEN IF DEFECT IS LATENT.—Knowledge of condition of machine furnished by master to employee is chargeable to master, even if defect therein is latent.

4. MASTER AND SERVANT—SERVANT MAY ASSUME WITHOUT INQUIRY OR EXAMINATION THAT APPLIANCES FURNISHED BY MASTER ARE SAFE AND SUITABLE.—A servant has right to assume without inquiry or examination that appliances furnished him are safe and suitable.

5. MASTER AND SERVANT—EXCLUSION OF TESTIMONY THAT DEVICE ON MACHINE WHICH BROKE, INJURING OPERATOR, WAS USUAL TYPE USED BY OTHER WELL-REGULATED MILLS HELD NOT ERROR.—In ac-

---

NOTE: As to master's duty to servant after learning of dangerous condition of machinery and appliance, see annotation in 41 L. R. A., 139.

Furnishing for servant's use article in general use as measure of master's liability, see annotation in 16 L. R. A. (N. S.), 128; 18 R. C. L., 589; 4 R. C. L. Supp., 1197; 6 R. C. L. Supp., 1078.

tion for injuries sustained by operator of cotton oil press when
machine broke, exclusion of testimony that the type of device used
by defendant was the usual type used by other well-regulated
oil mills *held* not error.

Before WHALEY, J., Richland, April, 1927.   Affirmed.

Action by John Hopkins, Jr., against the Southern Cotton
Oil Company.   Judgment for plaintiff, and defendant ap-
peals.

*Messrs. Thomas & Lumpkin,* for appellant, cite: *Doc-
trine of res ipsa loquitur does not exist in South Carolina:*
139 S. E., 778; 128 S. C., 390; 126 S. C., 231; 72 S. C.,
398; 5 Ann. Cas., 165; 122 S. C., 359; 97 S. C., 112; 69
S. C., 530; 75 S. C., 102; 66 S. C., 256; 102 S. C., 488;
135 S. C., 163; 134 S. C., 31.   *Verdict should have been
directed for defendant as a matter of law:* 77 S. C., 328; 90
S. C., 25; 96 S. C., 425; 58 S. C., 491; 99 S. C., 417.   *Where
servant knew safe way and of his own accord and volition
selected an unsafe way to perform his task, he cannot hold
master liable for the resulting injury:* 77 S. C., 328; 104 S.
C., 451; 101 S. C., 517.   *Error to strike out evidence as to
type of valves used by similar mills:* 66 S. C., 303; 98 S. C.,
125; 109 S. C., 400; 60 S. C., 153.   *Cases distinguished:*
126 S. C., 326; 120 S. C., 333; 112 S. C., 541; 101 S. C.,
351; 96 S. C., 425; 99 S. C., 231.

*Messrs. E. A. Blackwell* and *James Hopkins,* for respond-
ent, cite: *As to evidence of former breaking of machinery as
evidence of the master's liability:* 4 Labatt's Master & Serv-
ant, Sec., 1587-C; Shearm & Redf. Neg., 60b; 94 Pac., 331;
63 Pac., 500; 62 N. Y. S., 195; 56 N. E., 704; 80 Fed.,
483; 87 S. C., 178; 137 S. C., 319.   *Liability of master for
latent defects in instrumentalities used by servant:* 64 S. C.,
212; 86 S. C., 435; 81 S. C., 203; 99 S. C., 231.   *Where
instrumentality shown not to be in proper condition, prima
facie case of negligence on part of master made out; case
should go to jury:* 81 S. C., 203; 34 S. C., 211; 35 S. C.,
405; 18 S. C., 275; 126 S. C., 231.   *Refusal to direct verdict
proper in case at bar:* 134 S. C., 31.   *What others are using*

*is not test of what is safe and suitable, no error to exclude such testimony:* 60 S. C., 153.

March 23, 1928.

The opinion of the court was delivered by MR. CHIEF JUSTICE WATTS.

The plaintiff, John Hopkins, Jr. (colored), an employee of the Southern Cotton Oil Company, received a fracture of his jaw while working in the Columbia mill of the defendant company on or about the 18th day of November, 1926. Thereafter, on February 2, 1927, the plaintiff filed his complaint in the County Court for Richland County, claiming damages for such injury in the sum of $3,000.

The defendant duly filed its answer setting up the following defenses: A general denial; sole, separate, and independent negligence; contributory negligence; and assumption of risk on the part of the plaintiff.

The case was heard at one of the spring terms (April, 1927) of the Richland County Court by Judge Whaley and a jury.

At the conclusion of all the testimony, defendant made a motion for a directed verdict in its behalf on the grounds that the testimony adduced in the case did not prove a single one of the alleged specifications of negligence, and that the testimony was susceptible of only one reasonable inference, and that is, no actionable negligence had been proven, and that the injury was caused by the defendant's own negligent act, or at least by his contributory negligence.

The motion was refused by his Honor, the presiding Judge. On defendant's motion, the jury was instructed not to bring any verdict of punitive damages; there being no testimony to support same.

The jury returned a verdict for the plaintiff in the sum of $834, actual damages.

A motion for a new trial was made by the defendant upon the grounds hereinafter set forth, and the same was refused.

The exceptions, twelve in number, raise the following questions:

(1) Was there evidence of negligence on the part of the defendant in any of the particulars set out in the complaint such as would warrant the issue of its liability being submitted to the jury?

(2) Does the evidence show that plaintiff's injury was occasioned by his contributory negligence or his sole negligence?

(3) Was there error in rejecting or striking out the evidence referred to in the ninth exception?

His Honor was not in error in refusing to direct a verdict for the defendant and in submitting the issue of negligence to the jury.

There was evidence that the identical machine which was being operated by the plaintiff at the time he was injured had broken, or that the handle or lever of same had come off a comparatively short time before while being operated by another party in identically the same way and under the same conditions as it was being operated by the plaintiff when he was injured. The testimony of Eddie Perry and that of P. D. Richardson tends to establish the fact that the handle of the machine in question came off when operated by Charlie Morris, another employee of defendant, about four weeks before it came off and injured the plaintiff. It is true that the party operating same on that occasion, Charlie Morris, a witness for and employee of the defendant, sought to explain the flying off of the handle by stating that he failed to pull down the intake valve, as set forth, but his testimony in this respect is in direct conflict with that of the plaintiff's witnesses, Perry and Richardson, above referred to, and furthermore, is flatly contradicted by the testimony of the plaintiff's witnesses, Hopkins, Blackwell, and Perry, which is to the effect that Morris stated to them that he did pull down the intake lever and that the handle came off just

as it did when operated by the plaintiff.    Perry also testified that no repairs were made to the machine in question between the time of this happening and the occasion of plaintiff's injury.    The testimony further showed that this was one of twelve identical presses in the defendant's mill, and there is no evidence or suggestion by any of the witnesses that any of the other machines ever broke or that the handles or levers of same came off in a like manner as did this particular one on the two occasions in question and such evidence of a former breaking of the machine raises the issue as to whether it was in proper repair, whether it was defective, whether it was a suitable appliance to be furnished by the master, and whether in placing plaintiff in charge of same he was given a safe place to work.

The rule as to evidence of a former breaking of machinery as evidence of the master's liability is thus set out in 4 Labatt's Master and Servant, § 1587-C, as follows:

"Occurrence of Accidents.—Where the sufficiency or safety of the instrument which is claimed to have caused the accident is in issue, evidence of similar accidents resulting from the same cause is competent.    Such facts are in the nature of experiments to show the actual condition of the instrument and how it served its purpose when put to the use for which it was designed, and that the common cause of these accidents was a dangerous and unsafe thing."

Here was a clear-cut issue to be submitted to the jury; the testimony being conflicting as to whether the machinery was defective, and whether or not the master was chargeable with notice, and whether the master should have repaired the machine.    I agree with Judge Whaley, the machine was not a simple tool.    The admission of evidence of former occurrence was competent under *McGill Bros. v. Railroad,* 87 S. C., 178, 69 S. E., 156, and *Moore v. Atlantic Coast Line Railroad,* 137 S. C., 319; 135 S. E., 473.

The knowledge of the condition of the machine in question should have been known by the master, and, even if the defect was latent, this would not relieve it from liability. The following is quoted from the case of *Chase v. Railroad,* 64 S. C., 212; 41 S. E., 899:

"But as the law imputes to the master the knowledge of the danger, even though latent, in the use of the instrumentalities with which he provides his servant, he cannot escape liability by showing he was ignorant of this fact, unless he should further show that by the use of due diligence he could not have discovered the danger."

See, also, *Dixon v. Manufacturing Co.,* 86 S. C., 435; 68 S. E., 643. *Timmier v. Railway,* 81 S. C., 203; 62 S. E., 209. *Cutter v. Mallard Lumber Co.,* 99 S. C., 231; 83 S. E., 595.

When the plaintiff showed that the instrumentality in question was not in proper condition, a *prima facie* case of negligence on the part of the master (the defendant) was made out, and he was entitled to have his case submitted to the jury. See *Trimmier v. Railway,* 81 S. C., 203; 62 S. E., 209. *Carter v. Oil Co.,* 34 S. C., 211; 13 S. E., 419; 27 Am. St. Rep., 815. *Branch v. Railway,* 35 S. C., 405; 14 S. E., 808. *Lasure v. Manufacturing Co.,* 18 S. C., 275. *Bunch v. American Cigar Co.,* 126 S. C., 324; 119 S. E., 828.

There is no evidence that the plaintiff knew of the former breaking, or had knowledge of the defect in the machine. He had a right to assume that same was safe and suitable without inquiry or examination. *Lasure v. Manufacturing Co., supra; Carter v. Oil Co., supra; Branch v. Railway, supra.*

In the *Carter case* the rule is thus stated:

"But again, the rule is that it is the duty of the master and not of the servant to exercise due care and diligence to ascertain whether the appliances furnished are safe and suitable; and a servant has a right to assume, without inquiry

or examination, that the appliances furnished him are safe and suitable."

The rule is recognized by our Court in the case of *Lester v. Railway,* 93 S. C., 395; 76 S. E., 976, in which it was alleged that plaintiff was injured by the handhold or step at the top of a box car being loosely and insecurely fastened, of which fact the plaintiff was not warned, and the defendant failed to inspect the car, or to stop same before allowing plaintiff to climb upon it. From the opinion in the case it does not appear that the plaintiff offered evidence of or pointed out just what the defect was, but there was evidence sufficient to go to the jury of its defective condition and the Court speaking summed up the rule applicable very succinctly in the following language:

"Here, we have the proof of plaintiff's injury by some manner of defect in the appliance furnished by the master that at least furnished some *prima facie* evidence of negligence to go to the jury in the absence of any explanation or any rebutting evidence. This is sufficient to show an omission of duty on the part of the master to carry the case to the jury."

Also *Wilson v. Atlantic Coast Line Railway,* 134 S. C., 31; 131 S. E., 777.

We see no error in submitting all of the issues to the jury as complained of by the exceptions.

The ninth exception is overruled under *Lowrimore v. Mfg. Co.,* 60 S. C., 153; 38 S. E., 430.

"If the jury believe that the Palmer Manufacturing Company exercised such care as other well-regulated companies doing the like business ought to exercise, and as proper prudence demanded under the circumstances, nothing more can be required, and they are not responsible."

The Court's refusal to charge this request was made the basis of one of the defendant's exceptions. The Supreme Court, in an opinion by Chief Justice McIver, sustained the trial Court's refusal to charge said request and said:

"The question, as the Circuit Judge very properly said, was whether the defendant used proper care in furnishing proper machinery and other appliances for the performance of the work required of its employees, and not what other well-regulated companies did or ought to have done."

All exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that the defendant's motion for a directed verdict should have been granted, and therefore respectfully dissent from the affirmance of the judgment indicated in the opinion of the Chief Justice, for the reasons which follow.

The action is by the plaintiff, an employee of the defendant oil mill, for damages on account of personal injuries alleged to have been sustained by reason of the negligence of the defendant.

The questions raised by the pleadings and the proceedings in the trial are stated in the opinion of the Chief Justice, and need not be repeated ; also the general grounds of the appeal.

The circumstances attending the catastrophe appear to be as follows :

The plaintiff was engaged in working at a press, by which the oil from the prepared cotton seed meal was being extracted. It was composed of a heavy iron or steel frame in which were a number of shelves (press boxes, as they are called). Between them the meal in bags was placed. By oil hydraulic machinery the shelves were forced upward to what was called the "head" of the frame and the oil expressed. The oil constituting the hydraulic force was fed into a piston cylinder at the bottom of the machine by a pipe from the oil reservoir and pump. At the side of the machine was a valve, called the "intake" valve, which controlled the flow of the oil, and above it was another valve, called the "release" valve, which, after the pressure was cut off by closing the "intake" valve, released the oil from the cylinder, allowing

the piston to be lowered and the shelves to descend to their normal position.

After, upon the occasion, the plaintiff had opened the "intake" valve, admitting the pressure, and the process of extracting the oil by compression had been completed, the plaintiff attempted to open the "release" valve for the purpose of lowering the shelves and removing the "cake" from which the oil had been expressed, when the handle, stem, and nut of the "release" valve blew out, striking and seriously injuring him as he was standing over it.

The plaintiff was instructed, and admits that he appreciated the duty, always to close the "intake" valve, shutting off the flow of the hydraulic oil, before opening the "release" valve.

The plaintiff testified that, before he attempted to open the "release" valve, he closed the "intake" valve; and he is supported in this statement by testimony of two witnesses.

In view of the undisputed evidence that, when he opened the "release" valve, the oil spurted up to the ceiling, it appears to me that the evidence referred to is contrary to the actual physical facts, and cannot be entertained.

It appears to me, however, from what little I know of the laws of physics, that ordinarily, when the "intake" valve would be closed, after hydraulic pressure had forced the shelves upward with a pressure of 4,000 pounds to the inch, the opening of that valve would but slightly increase the pressure upon the "release" valve; the confined pressure would still be exerted against the latter valve, under the law of physics that the pressure of a fluid confined under pressure is exerted uniformly in all directions.

It may be assumed, then, that the evidence that the plaintiff obeyed instructions to close the "intake" valve before opening the "release" valve may not only be entertained, but is true, and, if the result would have been practically the same whether the "intake" valve was open at the time or

closed, we must look for some other cause of the blowing out of the "release" valve.

We have then presented the situation that the plaintiff did all that was required of him, under the circumstances; and yet the "release" valve blew out, inflicting injury. What caused it to do so? The defendant cannot be held liable in damages for the consequent injury to the plaintiff, *unless the cause be established and it be traced to the defendant's negligence.*

It has been consistently held for the past 25 years, ever since the case of *Gentry v. Railroad Co.,* 66 S. C., 256; 44 S. E., 728, that, when an accident happens by the breaking of a machine in ordinary use, *and there is no evidence of a defect in the machine,* the law will not draw first the inference that the machine was defective, and then from that inference draw the further inference of the lack of care on the part of the master—in other words, that a presumption cannot be mounted upon a presumption.

It is essential then for the plaintiff to show that the cause of the blowout was a defect in some part of the machine upon which the plaintiff was at work.

As is said in *Green v. Railroad Co.,* 72 S. C., 398; 52 S. E., 45; 5 Ann. Cas., 165, quoting with approval 2 Labatt Mast. & S., § 837 (1st Ed.):

"A servant cannot recover where it is merely a matter of conjecture, surmise, speculation, or supposition, whether the injury was or was not due to the negligence of the master." —in this case negligence in supplying a machine which was *defective.*

Now, then, let us see whether or not there was any evidence tending to establish the essential fact that there was a defect in the machine. The parts of the machine which blew out were the handle, the stem, and the nut, parts of the "release" valve. Not a single witness testified to a defect in any one of them.

The plaintiff, of course, after he was hurt, had no opportunity to examine any of these parts.  His witness, Perry, who assisted him all he could, testified that the parts were picked up from the floor by Klapman, the night supervisor, who put them back in place, and within three to five minutes the machine was being operated as before.  His witness Richardson was more cautious.  He testified that Klapman at the time put back the parts in place and started the machine going; that he could not say they were the same parts, but they were just like the others.  It will be noticed that neither of these witnesses testified to any defects in the parts. These were the only witnesses except the surgeon, who of course, knew nothing of the accident.

Now, coming to the testimony of the witnesses for the defendant, upon this point, which is certainly entitled to be considered in view of the total absence of evidence on the part of the plaintiff of a defect in any of the parts:

Lever, superintendent, testified that he examined the parts the morning after the accident.  He testified that he would not have known that that was the particular valve involved if he had not been told; that there was absolutely nothing wrong with it, and that it has been steadily running, without repairs, ever since; that none of the threads on any of the parts blown out or remaining in the valve were "stripped"; that it was impossible for the parts to have been blown out without "stripping" the threads; that the stem must have been unscrewed.

Hammond, a witness connected with another oil mill, testified that he made an examination of the particular valve, after the accident, and found it in proper condition and serviceable; that he did not personally handle it, but saw Lever open and shut it.

Klapman, the night supervisor, testified that, as soon as the accident happened, he was called there, and found the parts that had been blown out lying on the floor; that he

replaced them in the release valve, and that within three to
five minutes the machinery was running again, and with the
same parts has been running ever since; that there was no
sign of the threads having been stripped (it seems impossible
for these parts, up to that moment resisting pressure of
4,000 pounds to the inch, to have been blown out without
stripping the threads; and so this witness testified); that
there are 64 threads that would have to be stripped.

In view of the entire absence of evidence tending to show
a defect in the machinery and of the conclusive evidence to
the contrary, it may not be amiss to suggest a theory, and
I concede that it is only such upon which the blowout may
be explained.  The plaintiff testified that, as he attempted
to open the "release" valve, it was too tight to move in the
ordinary way, and that he "struck it like that (illustrating
by striking rail with hand), and, when I struck it, it blew
off. * * *   I shoved it and it didn't move, and I drew back
and struck it as far as I could with my hand, and it flew
(blew) off.  · * * *   I shoved it, and it didn't move, and
then I struck it *as hard as I could bear it* and it blew off in
my face."

In view of the fact that the stem, with its threads un-
stripped and the nut in like condition, were blown out, which
can only be explained by them being rapidly unscrewed, it is
not improbable that, being under tremendous pressure, the
unwinding process may have been initiated by the blow
delivered by the plaintiff.

In the very recent case of *Watson v. Charleston Co.,* 141
S. C., 355; 139 S. E., 778, this Court affirmed the order of
his Honor, Judge Bonham, granting a nonsuit.  In it his
Honor held:

"* * * It appears to the Court that the Supreme Court
has established the principle that to make out her case the
plaintiff prove something more than the mere breaking of
machinery or appliance.  *Holmes v. Davis,* 126 S. C., 231;

119 S. E., 249. *Evatt v. Piper Roofing Co.*, 128 S. C., 390;
123 S. E., 203. *Turner v. Poe Mfg. Co.*, 97 S. C., 112; 81
S. E., 430. *Edgens v. Gaffney Mfg. Co.*, 69 S. C., 529; 48
S. E., 538. *Nichols v. Seaboard Air Line Ry. Co.*, 122 S.
C., 359; 115 S. E., 323."

In the case of *Holmes v. Davis*, 126 S. C., 231; 119 S.
E., 249, the plaintiff was set to operate a power press which
was used to press surplus oil out of oil-soaked cotton waste.
The waste was inserted in a container into which an over-
head ram or plunger was intended to be lowered with great
pressure to express the oil. After filling the container, it was
necessary for the operator to smooth over the waste at the
top in order that the pressure would be applied evenly. The
plaintiff was thus engaged when the plunger or piston fell
or was forced down upon his left hand with great pressure,
thereby severely injuring it.

In the complaint brought to recover damages for the in-
jury, the plaintiff alleged the same general allegations of
negligence as were advanced in this case, first, that the ap-
pliance was defective; second, that the place to work was
unsafe; and, third, that the plaintiff was instructed to use an
unsafe appliance. A verdict was rendered for the defendant,
and, upon appeal to the Supreme Court, it affirmed the judg-
ment of the lower Court, saying:

"It has been decided by the Court over and over again
that proof of an injury to a servant by reason of the failure
of the machinery or appliance furnished by the master does
not raise the presumption of negligence on the part of the
master. *Gentry v. Railroad Co.*, 66 S. C., 256; 44 S. E.,
728. *Edgens v. Manufacturing Co.*, 69 S. C., 529; 48
S. E., 538. *Green v. Railroad Co.*, 72 S. C., 398; 52 S. E.,
45 [5 Ann. Cas., 165]. *Burton v. Oil Co.*, 75 S. C., 173;
55 S. E., 217. *Hall v. Railroad Co.*, 81 S. C., 522; 62 S. E.,
848. *Lyon v. Railroad Co.*, 84 S. C., 364; 66 S. E., 282.
*Herbert v. Parham*, 86 S. C., 252; 68 S. E., 564; 35 L. R.
A. (N. S.), 239. *Dixon v. Manufacturing Co.*, 86 S. C.,

435; 68 S. E., 643. *Lewis v. Build. Co.*, 87 S. C., 210; 69 S. E., 212. *Watson v. Railroad Co.*, 91 S. C., 127; 74 S. E., 121. *Lester v. Railroad Co.*, 93 S. C., 395; 76 S. E., 976. *Thomason v. Manufacturing Co.*, 95 S. C., 239; 78 S. E., 895. *Bennett v. Railroad Co.*, 98 S. C., 42; 79 S. E., 710. *Grainger v. Railroad Co.*, 101 S. C., 73; 85 S. E., 231. *Steele v. Railroad Co.*, 103 S. C., 102; 87 S. E., 639."

And further:

"Although it is alleged in the complaint that the machine was defective, there is not a particle of evidence to sustain this allegation, other than the inference that it must have been defective or it would not have fallen as it did. This, under the authorities cited, is not sufficient to carry the case to the jury."

In *Green v. Railroad Co.*, 72 S. C., 398; 52 S. E., 45; 5 Ann. Cas., 165, the Court by Mr. Justice Woods said, in addition to what is quoted above:

"Natural forces beyond the control or foresight of the master, such as * * * and, most probable of all, the unconscious errors of the servant in the use of his mind and hands, may cause a perfect machine to break. * * * Therefore, aside from judicial authority, the rule of reason seems to be that it is not safe to infer latent defect in the machine from the fact of its breaking in what to all seeming is ordinary use, because experience teaches the breaking may be due to imperfectly known natural forces, or to unconscious and undiscoverable errors of the human mind and hand controlling the machine."

In the case of *Nichols v. Seaboard Air Line Railway*, 122 S. C., 359; 115 S. E., 323, the present Chief Justice said:

"The injury of the plaintiff while in the master's employment raises no presumption of negligence on the part of the master. * * * Plaintiff has totally failed to show in any manner any negligence on the part of the master that

would allow him to recover against the defendant for his injury. The verdict is founded upon surmise, conjecture, or caprice, and without proven facts to support it. No reasonable inference can be drawn from the evidence that the defendant was in any manner negligent, so as to entitle the plaintiff to recover."

In the case of *Turner v. Manufacturing Co.,* 97 S. C., 112; 81 S. E., 430, which was for injuries received by the unaccountable starting of machinery, the Court said:

"The doctrine is well settled here, that in a case like this, the untoward event which works injury does not of itself raise the presumption of a defective machine, and, therefore, of negligence by the master; but there must be other testimony, direct or circumstantial, that the loom injured the weaver because it was defective in its parts and that such defect was the result of the master's neglect."

The case of *Edgens v. Manufacturing Co.,* 69 S. C., 530; 48 S. E., 538, presents a case very analogous to this one; it appearing in that case that the plaintiff, an employee of the defendant, was working in the bottom of a well. While so engaged, he was struck and injured by a piece of pipe which became uncoupled and fell from the apparatus used to force the water out of the well. The action of damages was based on the charge of negligence for furnishing defective and unsafe machinery. The Court, through Mr. Justice Woods, said:

"The evidence in this case as to the appliance and the accident does not suggest such an inference. The plaintiff and his witnesses testify to nothing more than that a section of the pipe fell because the thread slipped. There is nothing in the evidence to indicate that the threads were too few or too large, or too small, or that they were cut upon a defective pipe; nor was there evidence of the degree of pressure to which the coupling was subjected, nor any such description of the methods * * * employed in the

work as would enable the jury to infer negligence on the part of the defendant. In other words, the cause rested entirely on the proposition that the negligence of the master is to be presumed as a matter of law from the fact of the accident. This proposition cannot be sustained and the nonsuit was, therefore, properly granted."

In the case of *Green v. Catawba Co.*, 75 S. C., 102; 55 S. E., 125; 9 Ann. Cas., 1050, it is said:

"The principle is well established that proof of injury to the servant from the failure of the machinery or appliances furnished by the master does not raise the presumption of negligence by the master."

In *Gentry v. Railroad Co.*, 66 S. C., 256; 44 S. E., 728, the Court said:

"Our construction of the complaint is that the only act of negligence specified as causing the injury was the defective sill. After carefully considering the testimony, we have failed to discover any facts from which it might be inferred that the sill was defective. It cannot be successfully contended that the sill was defective from the mere fact that it gave way while the train was being operated in the usual or ordinary manner."

In *Porter v. Poe Manufacturing Co.*, 102 S. C., 488; 87 S. E., 418, the Court said:

"Negligence on the part of the master is not to be inferred from the happening of an injury to a servant; and where there is no evidence tending to show negligence on the part of the master, a recovery based on such negligence should be reversed."

See, also, *State v. American Co.*, 118 S. C., 333; 110 S. E., 800; note L. R. A., 1917-E, 4.

In *Steele v. Railroad Co.*, 103 S. C., 102; 87 S. E., 639, the Court said:

"To entitle a servant to recover of the master for injury caused by a defective appliance furnished, he must prove

not only that the appliance was defective, but, also that the defect caused the injury."

I respectfully submit that, in the opinion of the Chief Justice, *the real point at issue is assumed,* and a very proper statement of the law based upon that assumption is declared, where it is announced:

"When the plaintiff showed that the instrumentality in question *was not in proper condition,* a *prima facie* case of negligence on the part of the master (the defendant) was made out and he was entitled to have his case submitted to the jury."

I have italicized the assumption to which I refer. There was no evidence, as I see it, in the case tending to show that the machine was not in proper condition. With that as an assumed fact, there can be no doubt of the correctness of the statement.

The point is clearly developed in the *Green case,* where the Court said:

"When an injury to a servant is proved to result *from a defective machine,* the law puts upon the master the burden of proving that he used due care in making it safe · * * * (citing cases): But when an accident happens by the breaking of a machine in ordinary use, and there is neither proof of defects in the machine nor of error in its use by the servant, the law will not draw first the inference that the machine was defective, and then from that inference infer the lack of care of the master."

*Trimmier v. Railroad Co.,* 81 S. C., 203; 62 S. E., 209, cited by the Chief Justice, does no more than state the legal conclusion that must be drawn *upon proof of a defective appliance.*

In *Carter v. Oil Co.,* 34 S. C., 211; 13 S. E., 419; 27 Am. St. Rep., 815, also cited, the servant was furnished with a bag *with holes in it,* by which his hand was caught

in a machine. From the existence of the defect, a *prima facie* case was made out.

The same is true of *Branch v. Railroad Co.,* 35 S. C., 405; 14 S. E., 808. *Lasure v. Manufacturing Co.,* 18 S. C., 275; *Bunch v. American Co.,* 126 S. C., 324; 119 S. W., 828, also cited.

In the case of *Lester v. Railroad Co.,* 93 S. C., 395; 76 S. E., 976, also cited, the doctrine declared was explicitly based upon the *establishment of a defect;* as the Court says:

"Here, we have the proof of plaintiff's injury *by some manner of defect* in the appliance."

In that case the present Chief Justice said:

"The facts of the case bring it under this principle, which was applied in *Gilliland v. Charleston & W. C. Railway Co.,* 86 S. C., 137; 68 S. E., 186, and *Watson v. Atlantic Coast Line Railroad,* 91 S. C., 127; 74 S. E., 121, rather than under the principle on which *Green v. Southern Railway,* 72 S. C., 398; 52 S. E., 45; 5 Ann. Cas., 165, and other like cases were decided."

The *Gilliland case* was one of *proved defect* in a coupler; the *Watson case,* of *proved defect* in an angle-cock.

The case of *Wilson v. Railroad Co.,* 134 S. C., 31; 131 S. E., 777, also cited, was a case of *proved defect,* and in it the Court said:

"The proof of an injury does not raise the presumption of negligence on the part of the master"—citing *Holmes v. Davis,* 126 S. C., 231; 119 S. E., 249.

The only distant approach to evidence of a defect in the machinery was the fact that upon another occasion there was a blowout upon the same machine under similar circumstances.

The evidence of a defect at that time is no stronger than the evidence in the present case. To assume that a defect then existed, and for that reason it existed upon the present

occasion, and from that to infer negligence, is more than to mount Ossa upon Pelion; it is to mount a presumption upon a presumption upon a presumption.

The quotation from Labatt, in reference to the "occurrence of accidents," simply means that, when an accident is shown to have resulted *from a defect,* proof of other accidents which resulted *from the same cause* is admissible. It does not mean that, because a previous accident has happened with a machine, without showing that it was due to a defect, proof of that accident is evidence that the later accident was the result of a defect. This is apparent from a limitation to the announced doctrine, in the same section:

"This rule is not applicable * * * *where the instrumentality in question was not defective in such a sense as to import culpability."*

In all of the cases cited in the leading opinion, the injuries were shown to have resulted by some defect in the instrumentality or place. In the *Bunch case,* it was oil on the floor which was the proximate cause of the injury; in the case of *Berry v. Dillon Mills,* 120 S. C., 333; 113 S. E., 348, it was the breaking of a string, causing a belt to run off its pulley, which brought about the alleged injuries; in the case of *Barnhill v. Manufacturing Co.,* 112 S. C., 541; 100 S. E., 151, it was the absence of guard rails on a platform upon which the plaintiff was set to work; in the cases of *Cannon v. Lockhart Mills,* 101 S. C., 59; 85 S. E., 233, and of *Bize v. Chemical Co.,* 96 S. C., 425; 81 S. E., 10, holes in the floor were shown to have caused the injury; and in the case of *Cutter v. Mallard Lumber Co.,* 99 S. C., 231; 83 S. E., 595, it was shown that the plaintiff was required to use unsuitable appliances, and that the belting was in a worn and defective condition.

In the last place, I think, at the least, that a new trial should be granted upon the ground taken in the ninth exception, which assigns error in excluding testimony to the

effect that the type of valve used by the defendant was the usual type used by other well-regulated oil mills. The question is as to the *admissibility* of such evidence, not its legal effect.

The case of *Lowrimore v. Manufacturing Co.*, 60 S. C., 153; 38 S. E., 430, cited to sustain the exclusion of the evidence, I respectfully submit, is not authority therefor. In that case the defect in the machine, alleged to have been the cause of the accident, was the absence of a certain safety appliance, called a "dog." Testimony was received without objection as to the equipment of the machine without that appliance by other well-regulated companies. Then the defendant submitted a request to charge:

"If the jury believe that the Palmer Manufacturing Company exercised such care as other well-regulated companies, doing the like business, ought to exercise and as proper prudence demanded under the circumstances, nothing more can be required and they are not responsible."

It was refused, and the refusal made a ground of appeal. The Court in sustaining the refusal said:

"The question, as the Circuit Judge very properly said, was whether the defendant used proper care in furnishing proper machinery and other appliances for the performance of the work required of its employees, and not what other well-regulated companies did or ought to have done."

The Court immediately followed this statement with the declaration which exactly answers the question at issue:

"What such companies did may possibly have had some bearing upon the question of fact, whether defendant exercised proper care."

In other words, the similar equipment of the same type of machine by other well-regulated companies, while not conclusive upon the issue of negligence, is admissible upon that issue.

In the case of *Bodie v. Railroad Co.,* 66 S. C., 302; 44 S. E., 943, it was held, quoting syllabus:

"In an action against a railroad company for injury from negligence in failure to furnish a requisite force of hands to do special work, after promise, it is competent to show the usual methods on this and other roads of doing the same work."

In this case the testimony was offered by the *plaintiff.*

In a former appeal in the same case (61 S. C., 468; 39 S. E., 715) the Court held:

"The charge made the usual, customary way of doing things *a conclusive test,* whether due care is exercised therein, whereas *that is merely evidence which should go to the jury* along with the other evidence, leaving the jury to determine from all the evidence whether due care was observed."

In the case of *Bridger v. Railroad Co.,* 25 S. C., 24, the Circuit Court declined to charge that "the degree of care required of defendant is only such as is exercised by well-regulated railroads over their turntables, and that if defendant exercised such care in this case, there was no negligence," saying that other railroads' negligence could not excuse negligence by this defendant, and that it was for the jury to say whether there was negligence here.

In the case of *Nickles v. Railroad Co.,* 74 S. C., 102; 54 S. E., 255, the Court held, quoting syllabus:

"That a railroad company furnished its road and ran its trains and inspected its trestles in the customary manner which is generally found and believed to be safe and prudent is not the test of negligence, but such evidence should go to the jury, with the other evidence on question of due care."

In the case of *Keys v. Granite Co.,* 76 S. C., 284; 56 S. E., 949, the Court held:

"The Circuit Judge was in error in holding the defendant could not prove on the issue of negligence that clamps like these here used were in general use by well-regulated quarries"—citing the *Lowrimore case* and 3 Elliott on Evidence, § 2505.

In the case of *Sturdyvin v. Railway Co.,* 98 S. C., 125; 82 S. E., 275, the Court held:

"Negligence is charged in the failure of defendant to provide hand rails or grab-irons and steps, or running boards, at the sides of the tender. Plaintiff testified that it would be easier and safer to get on and off a moving engine if the steps were on the sides, and he mentioned two railroad systems which had them so placed. While it is true that the allegation of defendant's negligence is not to be tested conclusively or exclusively by what other well-regulated companies did or failed to do, still the testimony had some bearing upon the issue"—citing cases.

This testimony was offered by the plaintiff, admitted by the Court and held by this Court, in connection with other evidence in the case to be sufficient to carry the case to the jury.

In the case of *Fitzgerald v. Manufacturing Co.,* 74 S. C., 232; 54 S. E., 373, the Court held:

"While the practice of other well-regulated companies in the same business is not a conclusive test, yet such practice may be given in evidence on the question whether there was negligence in the particular alleged."

For the above-stated reasons I think that the defendant's motion for a directed verdict should have been granted upon the grounds upon which it was urged, and that at any rate the judgment should be reversed and a new trial granted upon the ground last discussed herein.